WESTERN UNION TELEGRAPH CO. v. HOWE et al.

(Circuit Court of Appeals, Eighth Circuit. April 27, 1910.)

No. 3,109.

1. TAXATION (§ 498*)—ASSESSMENT—REVIEW BY COURTS—TIME OF TAKING PROCEEDINGS.

Under Kan. Act March 6, 1907 (Laws 1907, c. 408), creating a state tax commission and requiring it to keep full minutes of its proceedings and Laws Kan. 1908, c. 81, which provides that the commission shall meet on the second Monday in April of each year for the purpose of assessing the property of telegraph companies and shall sit as a board of equalization on the second Wednesday in July of each year at which sitting it has power to correct any assessment made in such manner as will in its judgment make the valuation just, a court of equity is without power to entertain a suit to enjoin the commission from certifying an assessment of the property of a telegraph company, made in April, prior to its meeting as a board of equalization in July, at which meeting the telegraph company has the right to invoke its further action to correct the assessment if deemed excessive, the record of the commission being sufficient notice of its action.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 498.*]

2. TAXATION (§ 309*)—"ASSESSMENT."

The word "assessment" as used in the Kansas Constitution means valuation of property by the proper officers for the purposes of taxation; in

---

other words, it is the official listing of property for the purpose of constituting a basis upon which taxes are to be levied.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 509, 510; Dec. Dig. § 309.*

For other definitions, see Words and Phrases, vol. 1, pp. 549–555; vol. 8, pp. 7583, 7584.]

Appeal from the Circuit Court of the United States for the District of Kansas.

Suit in equity by the Western Union Telegraph Company against Samuel T. Howe, S. C. Crummer, and W. S. Glass as members of the State Tax Commission, and J. M. Nation, auditor of the state of Kansas. Decree for defendants, and complainant appeals. Affirmed.

The following is the opinion of Pollock, District Judge, in the Circuit Court:

Complainant, the Western Union Telegraph Company, brought this suit originally against Samuel T. Howe, S. C. Crummer, and W. S. Glass, members of the State Tax Commission of this state, Clarence Smith, secretary of said commission, and J. M. Nation, Auditor of the state, to enjoin what is averred to be an illegal tax and assessment on its property for the year 1908. The suit was originally instituted July 3, 1908. A restraining order was issued at the date of the commencement of the suit. By what is styled an amended and supplemental bill filed herein December 31, 1908, complainant brings in the county treasurers of the several counties of the state and makes them parties to the bill. The tax commissioners were appointed, qualified, and assumed to act in the matter complained of in the bill in pursuance of chapter 408, Laws 1907, of the state, as amended by the legislative assembly in the year 1908. The specific wrongs complained of by complainant in its bill are these: That the Tax Commission of the state caused complainant to return on blanks furnished for that purpose by it a statement and valuation of all its taxable property in the state for the year 1908 under the oath of its appropriate officer. In this statement the valuation fixed by the complainant on its property was the sum of $838,100.30. Thereafter, and on the 20th day of May, 1908, the State Tax Commission, as shown by the records of said commission, required by law to be kept, made an order assessing the property of complainant in the state at the sum of $3,159,322, and apportioned the same among the several taxing districts of the state as shown by said order, which reads as follows: "Now, on this 20th day of May, the Tax Commission being in session as a board of appraisers, pursuant to chapter 81, Laws of 1908, does hereby assess the property of the Western Union Telegraph Company, in the state of Kansas, in the sum of $3,159,322.00. For the purpose of distributing said amount among the taxing districts of the state through which the lines of said company run, there is assigned a value of $226.26 to each mile of pole line, including cross arms and one wire; and further the sum of $27.71 for each mile of additional wire on any mile of pole line, and the secretary of the commission is hereby instructed to prepare certificates to be signed by the State Auditor certifying to the county clerks of the several counties the value so assigned in order that the same may be placed upon the tax rolls of the respective counties."

It is the contention of the complainant, as averred in its bill, that the amount returned by it was the true and just market value of all its taxable property within the state subject to taxation for the year 1908; that the Tax Commission without instituting any inquiry into the actual value of complainant's property to determine the correctness or falsity of the return made by it, or the true and actual cash market value of its property, but, on the contrary, arbitrarily, and with a set purpose and without inquiry, therefore fraudulently, increased said assessment to the amount stated, as appears in the record of the commission. It is further contended by complainant as section 16, c. 408, Laws 1907, makes provision for the return of all persons, com-

panies, and corporations under oath of the property of such persons, company, or corporation, for the purpose of taxation, and as certain interrogatories may therein be submitted to be answered under oath, as was done in this case, and as said section further provides the making of any known false answer to any such interrogatories submitted shall be deemed perjury, and as the section further provides any person, company, or corporation which refuses to answer any such interrogatories submitted shall be guilty of misdemeanor and punished, that the Tax Commission could not arbitrarily disregard any .such return of property so made for the purpose of taxation. Wherefore an injunction is prayed against the assessment made by the commission as void.

At the time of filing and presenting the original bill, although complainant thereby confessed its liability to taxation on property owned by it·in the state of the value of $838,100.30, it neither tendered nor offered to pay its just proportion of taxes in the state based on such amount as a condition to the order prayed. By the amended and supplemental bill filed complainant tenders and pays into court the sum of $10,000, which it avers to be more than its just .proportion of the taxes due the state on the actual cash market value of its property, and asks the injunction prayed by it in its original bill. To this amended bill, defendants, the Tax Commission, its ·secretary, and the Auditor of State, have demurred. This demurrer has been presented in oral argument and on briefs of solicitors. While the question of the jurisdiction of this court is presented by complainant in support of its bill, the demurrer does not raise this question. I am satisfied, both under the statute law of the state and the general jurisdiction and power of the court, this court has jurisdiction to inquire into the questions presented by the bill. The ground of the demurrer is want of equity.

One of the objects and purposes of the Legislature as expressed in section 12, c. 408, Laws 1907, was that all assessments of property, real, personal, and mixed, should be made relatively just and uniform and at its true and full cash market value. Theretofore the taxable property of this state had been assessed in most instances from one-sixth to one-third of its actual market value. By the act in question the Tax Commission was created for the purpose of making the actual assessment of certain classes of property in this state and for the purpose of supervising·the assessment of other classes of property made by local assessors. This commission is, also, by the terms of the act, made a State Board of Equalization; section 17 of the act providing as follows: "The Tax Commission as hereby created shall constitute a State Board of Equalization, and shall equalize the valuation and assessment of property throughout the state; and shall have power to equalize the assessment of all property in this state between persons, firms or corporations of the same assessment district, between cities and townships of the same county and between the different counties of the state and the property assessed by the said Tax Commission in the first instance. And any person feeling aggrieved by the action of the county board of equalization may, within thirty days after the decision of said board, appeal to the State Board of Equalization for a determination of such grievances."

By the terms of section 1, c. 79, Laws 1908 of the state, which took effect January 29, 1908, the foregoing section was amended as follows: "That section 17 of chapter 408 of the Session Laws of 1907 be and the same is hereby amended to read as follows: Sec. 17. The Tax Commission as hereby ureated shall constitute a State Board of Equalization, and shall equalize the valuation and assessment of property throughout the state; and shall have power to equalize the assessment of all property in this state between persons, firms or corporations of the same assessment district, between cities and townships of the same county, and between the different counties of the state, and the property assessed by the said Tax Commission in the first instance. And any person feeling aggrieved by the action of the county board of equalization may, within thirty days after the decision of said board, appeal to the State Board of Equalization for a termination of such grievance. It shall be the duty of the Tax Commission to meet in its office on the second Wednesday in July in the year A. D. 1908, and of each year thereafter, to perform the work of equalization as hereinbefore provided. Said Tax Commission shall apportion the amount of tax for state purposes ·as required by law to be raised in the state among the several counties therein, in proportion to the valuation

of the taxable property therein for the year as equalized by said Tax Commission. Whenever the valuation of any taxing district, whether it be a county, township, city, school district or otherwise, is changed by the State Board of Equalization, the officers of such taxing district who have authority to levy taxes are required to use the valuation so fixed by the state board as a basis for making their levies for all purposes."

As shown by the record of the proceedings of the Tax Commission above quoted in making the assessment complained of in this case, the commission assumed to act under the provisions of chapter 81, Laws 1908, which, in so far as material to this inquiry, concerns only section 2 of that act, which reads as follows: "That section 4 of chapter 502 of the Session Laws of 1905 be and the same is hereby amended to read as follows: 7533. Meeting. 15d. Said Tax Commission shall meet at its office annually, on the second Monday in April, for the purpose of assessing the property of telegraph, telephone and pipe-line compánies in Kansas, except as hereinafter provided. The Tax Commission shall proceed to ascertain and assess the value of the property of said telegraph, telephone and pipe-line companies in Kansas, and in determining the value of the property of said companies in this state, to be taxed within the state and assessed as herein provided, said board shall be guided by the value of other personal property within the state."

However, it is contended by complainant, as chapter 408, Laws of 1907, had repealed chapter 502, Laws 1905, therefore, as section 2, c. 81, Laws 1908, above quoted, was an attempt by the Legislature to amend section 4, c. 502, Laws 1905, theretofore repealed, said section 2, c. 81, Laws 1908, is wholly inoperative and void, and confers no power upon the Tax Commission whatever, but that the sole and only power possessed by the commission to assess the property of complainant for the year 1908 must be found in chapter 408, Laws 1907, and acts amendatory thereof. And it is further contended that act does not authorize the board to disregard the return made by the complainant of its property and to increase the amount of taxable property as shown in said return, as was done in this case, without notice to complainant; and, further, if said act does attempt to so authorize the commission, it is unconstitutional and void.

Paragraph 15, § 12, c. 408, Laws 1907, confers power on the Tax Commission, as follows: "Fifteenth. To make appraisement and assessment of all railroads and the property of railroad corporations, excepting such real estate as is not used in the daily operation of its railroad, of all telegraph lines and property, of all telephone lines and property, the property of all express companies, sleeping car companies, and private car lines, doing business within the state of Kansas, of gas pipe lines and property, of all oil pipe-lines and property, of all street railroads, electric lines and property, and all express company property, within and without corporate limits of cities, doing business in the state." It is contended by solicitors for defendants this section confers ample power on the commission to levy the assessment against the property of complainant in this case, and in making the assessment the commission might, as it did, without notice to complainant, depart from the value returned by complainant under the provisions of the act. And, as the act requires an official record of the acts of the commission to be kept, complainant was required to take notice of the contents of such record, to know the assessment against it had been increased from the amount returned by it; and, in case it felt aggrieved by the assessment made by the commissioner, it was its duty under the provisions of chapter 79, Laws 1907, above quoted, to apply to the State Board of Equalization at its meeting fixed by the terms of that act, the second Wednesday of July, 1908, for relief; and as this suit was instituted by complainant on the 3d day of July, 1908, before the date fixed by law for the convening of the State Board of Equalization, at which it might have presented its grievance, its evidence in support thereof, and received redress for wrongs suffered by it, if any, it had not exhausted its remedy at law when this suit was instituted, and, having thus neglected its duty and failed to avail itself of its legal remedy, it cannot be afforded by this court the relief prayed.

Again, it is contended by defendants the relief prayed by complainant in this suit should not be granted it because it did not prior to or at the date of

the institution of this suit tender the amount necessary to pay the taxes admitted to be legal and valid. And, again, it is contended complainant has its remedy at law to pay the tax assessed against it by the commission under protest and recover the excess, if any, by action at law.

There can be no substantial doubt, to my mind, but that chapter 502, Laws 1905, was repealed by the Legislature in its enactment of chapter 408, Laws 1907, as that act provides a general, comprehensive, and complete scheme of taxation for the state, which is in conflict with the provisions of the act of 1905 and therefore supersedes that act. Therefore the amendatory act of 1908, as found in section 2, c. 81, was probably ineffective to revive section 4, c. 502, Laws 1905. Hence that act, being the one recited in the record of the commission, was ineffective to confer the power attempted to be exercised by the commission. However, if the commission possessed full and ample power under the law to make assessment of the property of complainant derived from any source, it might lawfully exercise such power, and the fact that it recited in its record a wrong source of power exercised would neither impair nor nullify its act in so doing. By paragraph 15, § 12, Laws 1907, above quoted, the commission is given plenary power to assess the property of all telegraph companies. While, under the provisions of that act, it may call upon any or all persons, companies, or corporations to make return of their property, and to answer such interrogatories as may be proposed by the commission, yet I am not of the opinion such return when made is in any just sense conclusive on the commission, but, on the contrary, it is advisory only. The duty imposed on the commission by the terms of the act is "to make appraisement and assessment of * * * all telegraph lines and property (section 15) at its true and full cash market value. (Section 12.)" As to the extent of any such property or as to its physical condition, its value, and all other questions relating thereto, it has the power to apprise itself through interrogatories submitted to the company or person whose property is assessed, or from any other source or sources it may elect, in such way and manner as it may see fit. As to the time at which the act of assessment will be made, it is required to give no notice. As to the method employed by it in arriving at the value of the property assessed, it is not compelled to state. It is required to make a public record of the act of assessment and to meet on a day certain to equalize assessments made by it and other assessors.

As complainant did not pursue the remedy afforded it by law to have correction of errors committed against it, if any, by the state board of equalization, at its meeting on the second Wednesday of July, 1908, and as the commission seems to have acted in pursuance of lawful authority and in an appropriate manner, and as resort was had to this court before the expiration of the time at which complainant might have applied to the state board of equalization for the correction of errors against it, and have been there heard, I am of the opinion the demurrer interposed for want of equity must be sustained under authority of the adjudicated cases.

In Stanley v. Supervisors of Albany, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000, which was an action to recover taxes paid, Mr. Justice Field, delivering the opinion of the court, said: "In nearly all the states, probably in all of them, provision is made by law for the correction of errors and irregularities of assessors in the assessment of property for the purposes of taxation. This is generally through boards of revision or equalization, as they are often termed, with sometimes a right of appeal from their decision to the courts of law. They are established to carry into effect the general rule of equality and uniformity of taxation required by constitutional or statutory provisions. Absolute equality and uniformity are seldom, if ever, attainable. The diversity of human judgments, and the uncertainty attending all human evidence, preclude the possibility of this attainment. Intelligent men differ as to the value of even the most common objects before them—of animals, houses, and lands in constant use. The most that can be expected from wise legislation is an approximation to this desirable end; and the requirement of equality and uniformity found in the Constitutions of some states is complied with when designed and manifest departures from the rule are avoided. To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, where the assessing officers

had jurisdiction to assess the property. Their action is judicial in its character. They pass judgment on the value of the property upon personal examination and evidence respecting it. Their action being judicial, their judgments in cases within their jurisdiction are not open to collateral attack. If not corrected by some of the modes pointed out by statute, they are conclusive, whatever errors may have been committed in the assessment. As said in one of the cases cited, the money collected on such assessment cannot be recovered back in an action at law, any more than money collected on an erroneous judgment of a court of competent jurisdiction before it is reversed."

In Chicago, B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636, Mr. Justice Holmes, delivering the opinion of the court, said: "Again, this board necessarily kept and evidently was expected by the statutes to keep a record. That was the best evidence, at least, of its decisions and acts. If the roads had wished an express ruling by the board upon the deductions which they demanded, they could have asked for it and could have asked to have the action of the board or its refusal to act noted in the record. It would be time enough to offer other evidence, when such a request had been made and refused. See Fargo v. Hart, 193 U. S. 490, 498 [24 Sup. Ct. 498, 48 L. Ed. 761]; Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus, 133 Ind. 513, 542 [33 N. E. 421, 18 L. R. A. 729]; Havemeyer v. Board of Review, 202 Ill. 446 [66 N. E. 1044]."

In Adams Express Co. v. Ohio, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683, Mr. Justice Fuller, delivering the opinion of the court, said: "We have said nothing in relation to the contentions that these valuations were excessive. The method of appraisement prescribed by the law was pursued and there were no specific charges of fraud. The general rule is well settled that, 'whenever a question of fact is thus submitted to the determination of a special tribunal, its decision creates something more than a mere presumption of fact, and, if such determination comes into inquiry before the courts, it cannot be overthrown by evidence going only to show that the fact was otherwise than as so found and determined.' Pittsburgh, Cincinnati, etc., Ry. v. Backus, 154 U. S. 421 [14 Sup. Ct. 1114, 38 L. Ed. 1031]; Western Union Tel. Co. v. Taggart, 163 U. S. 1 [16 Sup. Ct. 1054, 41 L. Ed. 49]."

In the case at bar there are no specific allegations of fraud made against the board. The charge is made on deduction and inference only, and is averred as follows: "And your orator avers that the total amount as shown by said sworn statement filed with the said Tax Commission by your orator was $838,100.30, which represented and was the carefully ascertained and full value in money of all the property of the company of your orator in the state of Kansas; that without instituting any investigation to determine the truth or falsity of such statement, and without looking at the property and determining its value, and arbitrarily, and of set purpose and therefore fraudulently, the said members of the Tax Commission, to wit, Samuel T. Howe, S. C. Crummer, and W. S. Glass, took the said statement and increased the various items thereof until the same aggregated $3,159,322 which they declared to be the assessment for the year 1908 of the property of said company, and placed it as such statement upon their records as hereinbefore set out." This is not sufficient. Mr. Justice Holmes, delivering the opinion of the court in Chicago, B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636, said: "The dominant purport of the bills is to charge political duress, so to speak, and a consequent scheme of fraud, illustrated by the specific wrongs alleged, and in that way to make out that the taxes were void. As the cases come from the Circuit Court, other questions besides that under the Constitution are open, and therefore it is proper to state at the outset that the foundation for the bills has failed. The suggestion of political duress is adhered to in one of the printed briefs, but is disposed of by the finding of the trial judge, which there is no reason to disturb. The charge of fraud, even if adequately alleged (Missouri v. Dockery, 191 U. S. 165, 170 [24 Sup. Ct. 53, 48 L. Ed. 133]), was very slightly pressed at the argument and totally fails on the facts. Such charges are easily made, and, it is to be feared, often are made without appreciation of the responsibility incurred in making them. Before the decree could be reversed, it would be necessary to consider seriously whether the constitutional question on which the appeals are based was not

so pleaded as part of the alleged fraudulent scheme that it ought not to be considered unless that scheme was made out. Eyre v. Potter, 15 How. 42, 56 [14 L. Ed. 592]; French v. Shoemaker, 14 Wall, 314, 355 [20 L. Ed. 852]; Hickson v. Lombard, L. R. 1 H. L. 324."

It is, however, contended the Tax Commission, sitting as a State Board of Equalization, was without power to reduce the assessment theretofore made by it. The act provides: "The Tax .Commission as hereby created shall constitute a State Board of Equalization and shall equalize the valuation and assessment of property throughout the state; and shall have power to equalize the assessment of all property in this state between persons, firms or corporations of the same assessment district, between cities and townships of the same county, and between the different counties of the state and the property assessed by the said Tax Commission in the first instance." In making the assessment in the first instance the commission acted in the exercise of a judicial power. The same power is required to be exercised by it in equalizing assessments throughout the state. It undoubtedly possessed the power as a State Board of Equalization to make the assessment against complainant in its judgment equal to that assessed against other property in the state, whether by so doing it should raise or lower the assessment theretofore made by it. To this board, in this capacity, under the law, complainant might have resorted. It did not do so, but instituted this suit prior to the date on which the board could convene under the law. And it was asserted in argument the mere physical value of the property was returned by complainant, and not the actual value of the property considered as forming an integral part of the property of a large going business concern, operating throughout the country. That for this reason the value was increased by the commission, as it would have a right to do. Central Pacific R. R. Co. v. California, 162 U. S. 91, 16 Sup. Ct. 766, 40 L. Ed. 903; People v. Central Pacific R. R. Co., 105 Cal. 576, 38 Pac. 905; Chicago, B. & Q. Ry. Co. v. Babcock, supra.

Again, it was contended in argument the assessment made merely equalized the valuation placed on the property of complainant with the valuation placed on other property throughout the state, all of which had been increased from three to six times what it had been theretofore assessed at, and to its actual cash market value; that, under the assessment made by the commission and under the present system of assessment for taxation, the taxes levied against complainant on the assessment made do not equal one-half theretofore paid by complainant in the state.

In view of the entire record, I am of the opinion the statute law of the state, under which the assessment was made, is constitutional and valid; that the commission acted in the exercise of lawful authority in making the assessment against complainant's property; that no sufficient acts of fraud are charged by complainant to warrant the granting of the relief prayed in this case; that by the bill presented, and the amended and supplemental bill, complainant has not shown itself entitled to an order perpetually enjoining the assessment made against it. Therefore the demurrer interposed must be sustained.

It is further directed the restraining order heretofore granted in this case be set aside and held for naught unless complainant, being so advised, shall further amend its bill of complaint within fifteen days from this date.

Charles Blood Smith (George H. Fearons, Brown & Wells, Francis N. Whitney, and Samuel Barnum, on the brief), for appellant.

W. S. Glass (F. S. Jackson, Atty. Gen., on the brief), for appellees.

Before SANBORN, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

RINER, District Judge. This was a bill in equity brought by the appellant, hereafter called the Telegraph Company, in the Circuit Court of the United States for the District of Kansas, against Samuel T. Howe, S. C. Crummer, and W. S. Glass, members of the State Tax

Commission, hereafter, called the Tax Commission, and J. M. Nation, Auditor of the state of Kansas, by which it was sought to enjoin the Tax Commission from equalizing, and the Auditor from certifying, to the various taxing districts in Kansas an assessment made by the Tax Commission upon the Telegraph Company's property which it alleged in the bill was grossly excessive and made with the fraudulent intent of discriminating in the matter of assessment against the Telegraph Company and certain other corporations. Defendants demurred to the bill. Before the demurrer was disposed of, the Telegraph Company, by leave of the court, filed an amended and supplemental bill. A demurrer was filed to the amended and supplemental bill, and, after argument, sustained by the Circuit Court and the bill dismissed.

After setting out the necessary jurisdictional allegations, it was further alleged in the amended bill that the Telegraph Company had filed an acceptance with the Postmaster General of the United States as required by an act of Congress (Act July 24, 1866, c. 230, 14 Stat. 221), entitled: "An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes"; that the lines of telegraph communication constructed by the Telegraph Company in the state of Kansas were an essential part of the interstate telegraphic communication of the United States. It was further alleged in the amended bill that the Tax Commission had made a grossly excessive appraisement of the Telegraph Company's property in Kansas; that the Telegraph Company had complied with the statute requiring it to make a statement or return to the Tax Commission; that such return was verified by its superintendent for the state of Kansas, and, as made, showed that the amount $858,100.30 was the true and actual value of the property of the Telegraph Company in the state of Kansas; that the State Tax Commission, without any investigation of the truth or falsity of the return made by the Telegraph Company, and without any examination of the property with a view to determining its value, arbitrarily "and of set purpose," and hence fraudulently, increased the assessed value of the Telegraph Company's property in the state of Kansas to the sum of $3,159,322. The bill prayed that the Tax Commission be enjoined from acting upon the assessment so made by it, and from using said assessment as a basis for equalizing the valuation and assessment of the Telegraph Company's property; that the assessment be annulled and set aside and declared void, and that a true assessment of its property be made. A payment of $10,000 was made in court by the Telegraph Company for the benefit of the various taxing districts in the state, which it claimed, under the allegations of the bill, covered all just and legal taxes due from the Telegraph Company upon its property in the state of Kansas. The Circuit Court issued a temporary restraining order, but, upon the final hearing of the demurrer to the amended bill, set the restraining order aside and dismissed the amended bill.

A valid assessment is, of course, indispensable as a prerequisite to levying a valid tax. American & English Encyclopedia of Law, 660.

To determine the question presented by this record it will be necessary to briefly notice the provisions of the Constitution of Kansas and the legislation of that state relating to the assessment and levying of taxes. The word "assessment" as used in the Constitution (section 1, art. 11) means valuation of property by the proper officers for the purposes of taxation. Hines et al. v. City of Leavenworth, 3 Kan. 187. In other words, it is the official listing of property for the purpose of constituting a basis upon which taxes are to be levied.

By an act of the Legislature approved March 8, 1905 (Laws 1905, c. 502), entitled "An act to amend article 5, chapter 107, of the General Statutes of 1901, being sections 7530, 7531, 7532, 7533, 7534, 7535, 7536, 7537, 7538, 7539 and 7540 of the same, and to provide for the assessment of taxes on the property of telegraph, telephone and pipe-line companies, defining what constitutes such companies, requiring annual reports, and providing a penalty for neglect or refusal to make same, and repealing the sections mentioned," it is provided that every telegraph company doing business within the state, in the form and manner prescribed by statute shall make and file with the Auditor of State a verified return setting forth certain facts concerning the company's property to be assessed. Among other things a telegraph company is required to state the name of the company, the state in which it was organized, the location of its principal office, the name and address of its president, secretary, auditor, treasurer, and superintendent, the name and postoffice address of its chief officer or managing agent in Kansas, the par value of its shares of stock, and a detailed statement of the real estate owned by the company in the state of Kansas, where situated, and the value thereof, the whole length of its lines within the state, including all lines controlled and used by it under lease or otherwise, the number of miles in each county, together with a correct inventory of all other property owned by the company in Kansas on the 1st day of March, where situated and the value thereof, and the total gross receipts of the company for the year ending the 1st day of the next preceding January from whatever source derived within the state of Kansas. This act also provides that any company interested in any assessment at any time after the meeting of the Tax Commission as a board of assessors, and before the determination by the Tax Commission of the valuation for the purposes of taxation of the property of any telegraph company, may, on written application, appear before the Tax Commission and be heard in regard to the matter of the assessment and valuation of its property. It is further made the duty of the Tax Commission to report to the Auditor of State the total value of the property of telegraph companies in Kansas as assessed by it, and to file with the Auditor of State all statements and other papers connected with the assessment and valuation. From the total assessed value of the property of any telegraph company it is made the duty of the Auditor of State to deduct the value of any real estate situated in Kansas owned by such company; the value of the property of such company, after deducting the assessed value of real estate, is to be apportioned by the Auditor of State among the several counties through or into which

the lines of such company may run, so that each county will be assigned such a part of the entire valuation of the property within the state as will equal the relative value of the property of the company within the county to that in the state, and in proportion to the length of the lines owned by the company in such county might bear to the length of its entire lines in the state. After the assessment of the property of the Telegraph Company by the Tax Commission and before it has been certified by the Auditor of State to the several counties, it is made the duty of the Tax Commission, on application of any interested person or company, or on its own motion, to correct the assessment or valuation of the property of any such company in such manner as in its judgment will make the valuation thereof just and equal. Prior to March 6, 1907, the board of appraisers consisted of the Auditor, the Lieutenant Governor, the Secretary of State, the Attorney General, and the State Treasurer. By an act of the Legislature of Kansas approved on the date last mentioned (Laws 1907, c. 408) a state board was created to be known as the Tax Commission, composed of three persons to be appointed by the Governor by and with the advice and consent of the Senate, and this commission succeeded to, and took the place of, the Board of Railroad Assessors and the State Board of Equalization.

The last-named act necessarily worked an implied repeal of section 3 of the law of 1905 because it substituted the Tax Commission for the board of appraisers or assessors as provided for in that section. Taking the substance of the act from its title, it created a Tax Commission and defined its powers and duties, fixed the compensation of its members and employés, abolished the Board of Railroad Assessors and the State Board of Equalization, and provided penalties for the violation of certain provisions therein; repealed certain sections of the general statutes of Kansas therein mentioned, "and all acts and parts of acts in so far as they conflict with this act," and made certain appropriations for the purpose of carrying the act into effect. It is undoubtedly true that the act of 1908, being chapter 81 of the Session Laws of that year, was inoperative as to section 3 of the act of 1905, for the reason already suggested. It is to be noticed that the Telegraph Company is seeking by its bill to enjoin the preliminary work of assessment by the Tax Commission before that commission had completely exercised its quasi judicial discretion by equalizing the assessments throughout the state. Under the act of 1907, the commission is required to keep full minutes of its proceedings; the law of 1908 provides for the meeting of the Tax Commission on the second Monday in April for the purpose of assessing the property of telegraph companies, and in determining the value of such property for taxation, the board is directed by the statute to be guided by the value of other personal property within the state. The law of 1908 provides that the Tax Commission shall sit as a board of equalization on the second Wednesday of July in each year. It will thus be seen that ample provision is made for a hearing before the Board of Equalization by any person or corporation feeling aggrieved by the assessment made by the Tax Commission.

As we have pointed out, under the law of 1908 the commission is required to meet as a board of equalization on the second Wednesday in July of each year, and that an official record is kept of the assessments made at the April meeting and if the taxpayer is not satisfied he may apply to have the assessment corrected; but the board is not required to disclose the method employed by it in arriving at the value of the property assessed. The statute requires it to make an assessment of all telegraph lines and property at their true cash market value, and this it may ascertain in such manner as to it may seem fit. While no specific notice of an increase is required by the statute, the taxpayer is at liberty to examine the public record made by the commission at its April meeting. and if his assessment has been increased, he has the right to appeal to the Board of Equalization at its July meeting. As said by Mr. Justice Holmes, in Chicago, Burlington & Quincy Railroad Company v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636: "Again, this board necessarily kept and evidently was expected by the statute to keep a record. That was the best evidence, at least, of its decisions and acts. If the roads had wished an express ruling by the board upon the deductions which they demanded, they could have asked for it and could have asked to have the action of the board or its refusal to act noted in the record. It would be time enough to offer other evidence, when such a request had been made and refused. Fargo v. Hart, 193 U. S. 490, 24 Sup. Ct. 498, 48 L. Ed. 761; Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Backus, 133 Ind. 513, 33 N. E. 421, 18 L. R. A. 729; Havemeyer v. Board of Review, 202 Ill. 446, 66 N. E. 1044." Here the equity powers of the court are invoked to relieve against anticipated injury consequent upon an anticipated fraudulent assessment before the assessment is completed, and the effect of an injunction would be to take away from the Tax Commission all power of discretion and judgment in arriving at a fixed and proper valuation.

The Telegraph Company did not pursue the remedy afforded by law to have its assessment corrected by the State Board of Equalization, but on the contrary brought its suit before the board had an opportunity to complete the exercise of its quasi judicial discretion by equalizing the various assessments throughout the state, and completing the assessment of this property. The result is that this suit is premature.

The decree of the Circuit Court is accordingly affirmed.