No. 31,005.

Milo T. Jones and L. B. Stewart, *Appellants,* v. The Sunflower Natural Gas Corporation et al.; Charles McDonald, Intervener, *Appellee.*

(22 P. 2d 482.)

Opinion filed June 10, 1933.

*Hugo T. Wedell* and *T. R. Evans,* both of Chanute, for the appellants.

*L. H. Cable* and *T. F. Morrison,* both of Chanute, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to quiet title to certain oil and gas leases against a lien imposed thereon to satisfy an unpaid claim for well drilling.

Plaintiffs claimed to be the owners of the leases. The Sunflower Natural Gas Company, defendant, was in possession of the leases and made the contract for the drilling. Charles McDonald, intervener, was the driller who filed the lien claim. The issues formed by the pleadings revealed the position of the Sunflower company to be largely neutral. The main conflict of interest lay between plaintiffs and intervener.

No material dispute of fact was developed by the testimony, although plaintiffs challenged the competency of much of it. It appears that in 1929 plaintiffs were the owners of certain leases, one of which was on Allen county land belonging to M. J. Baker. On April 9, 1929, plaintiffs entered into a contract to sell these leases to the Sunflower company upon terms as follows: $1,000 in cash, $1,500 on May 9, $12,500 on July 9, and stock to the amount of $2,500 in the Sunflower company. This contract and a corresponding bill of sale, together with other pertinent instruments relating thereto, were placed in escrow with an official of the First National Bank of Chanute. The first two payments under the contract were made and the Sunflower company entered into possession of the leased premises. Default was made in payment of the $12,500 due on July 9, the consequences of which had been anticipated and provided for in the contract, as follows:

"It is by said parties mutually agreed as follows: That in case of failure or refusal, for whatsoever the reason or cause upon the part of second party to exercise this option, and to make the payment of the cash sum herein specified, and delivery certificates for stock in the sum herein named—this option shall thereupon become terminated, void and of no further effect; and said bank shall forthwith redeliver to first party all executed instruments deposited herewith."

However, this provision of the contract was not invoked, and the Sunflower company remained in possession with the acquiescence of

plaintiffs, who urged it to proceed with its work of drilling and developing the premises for production of oil and gas. In the summer of 1930 the defendant Sunflower company, with the encouragement of plaintiffs, engaged one Charles McDonald, a well driller, to drill on the Baker land. Stewart, one of these plaintiffs, selected the site for the drilling rig, and had a conversation with McDonald in which he told him he must not look to plaintiffs for his services. McDonald testified:

"I met Mr. Stewart on Main street at Chanute, Kan., prior to the drilling of this well. It was after I had moved the rig up there, but before I had drilled a foot. . . .

"A. . . . I says, 'What am I going to do for my pay if the Sunflower don't pay me—look to you for it?' and he said, . . . 'No; I won't pay it.' Yes, sir; he said that.

. . . . . . . . . . . . . . . .

"Q. And he told you if you drilled out there you would have to get your money from the Sunflower, didn't he? A. Yes, sir, that's what he said.

"Q. Yes, sir, and on that basis, and with that clear understanding, you went ahead and drilled that well? A. Yes, sir; I did, sir."

A producing gas well was completed on the Baker lease on September 13, 1930; and pursuant to some informal arrangement of those concerned, the proceeds of the gas runs were delivered for distribution to the officer of the Chanute bank who was serving as escrow holder. He testified that between September 29, 1930, and November 25, 1930, he received the sums of $296.08, $318.75 and $386.80 from the sales of gas runs from the well on the Baker and other leases; that plaintiff Stewart had ordered him to pay $100 to Baker on account of royalty due on the Baker lease and to apply certain proportionate amounts of his receipts to the credit of the notes which the Sunflower company had given for the purchase of the leases. Between February 25, 1930, and November 25, 1930, he had collected and disbursed $3,082.71, part of which came from the sale of gas from the well drilled by the intervener on the Baker lease.

The trial court made findings of fact and conclusions of law which occupy eighteen pages of the abstract, the net result of which was that the intervener's lien was upheld and foreclosure thereof was decreed.

Plaintiffs appeal.

1. The point is first stressed that the intervener was informed that he must look solely to the Sunflower company and not to plaintiffs for his pay, and therefore he cannot now charge the property

of plaintiffs with a lien for the well drilling. But this contention begs the question as to the ownership of the property. Plaintiffs did own it prior to April 9, 1929. On that date they made a contract to sell it to the Sunflower company. To be sure this contract was called an "option agreement," and elsewhere a "conditional sales contract," but following its execution plaintiffs permitted the Sunflower company to take possession of the property and to remain in possession and to continue the exercise of dominion over it notwithstanding the third installment of the purchase price was not paid on its due date. It is familiar law that where one party to a contract has the right to terminate it for breach of its terms by the other party thereto, he must exercise his right to terminate promptly; otherwise it will be regarded as waived, especially where the other party or those in privity with him have been led to believe that the right to terminate will not be invoked. (*Bloom v. Rugh,* 98 Kan. 589, 160 Pac. 1135; *Terwilliger v. McCorkle,* 108 Kan. 480, 196 Pac. 618; Contracts, Restatement, A. L. I., §§ 296, 297.)

Moreover, more than a year after default of payment of the third installment, plaintiffs urged the Sunflower company to proceed with the development of the Baker lease, selected the site for the drilling rig, and when the intervener completed the well plaintiffs accepted belated payments on the purchase notes derived from sales of gas produced therefrom. In such a situation the trial court correctly ignored the original labels of the contract and dealt with its actualities as interpreted by the conduct of the parties. The Sunflower company was the equitable owner of the property so far as concerned the validity of the intervener's lien. (*Lumber Co. v. Arnold,* 88 Kan. 465, 129 Pac. 178; *Miller v. Bankers Mortgage Co.,* 130 Kan. 543, 287 Pac. 618. See, also, *Mendenhall v. Producing Co.,* 115 Kan. 729, 224 Pac. 926.)

We are repeatedly reminded, however, that plaintiffs informed the intervener that he must look exclusively to the Sunflower company for payment for drilling the well. That information, caution or admonition did not diminish the intervener's rights. The law gave him a right to a lien on the leasehold, if timely filed, to secure payment for his services; and nothing plaintiffs said or could say detracted one jot or tittle therefrom. Furthermore, let us note exactly what plaintiff Stewart did say to McDonald. He said,

"No, I won't pay for it.

"Q. And he told you if you drilled out there you would have to get your money from the Sunflower, didn't he? A. Yes, sir, that's what he said."

The trial court's judgment is not out of harmony with that conversation. No judgment requiring plaintiffs to pay for McDonald's work is entered against plaintiffs. He did not look to plaintiffs but to the Sunflower company for his pay. It did not pay, and in consequence he filed his lien against the property bound under the law to satisfy it.

2. It is next contended that plaintiffs' lien statement did not comply with the statute, which, among other details, requires that it should set forth the name of the owner of the land, and the name of the owner of the leasehold. (R. S. 55-209; R. S. 1931 Supp. 55-207.) The lien statement named the Sunflower Natural Gas Company as the owner of the leasehold, and under the facts narrated above it was the equitable owner of the leasehold at the time the contract for well drilling was made and when the well was completed. (*Lumber Co. v. Arnold*, supra.)

The other objections urged against the judgment have been carefully considered, but they do not demonstrate that substantial error inheres in the judgment of the trial court, nor do they suggest anything to warrant further discussion.

The judgment is affirmed.