No. 35,630

Henry Templing, David Templing and Emanuel Templing, *Appellants,* v. M. W. Bennett and Glenn H. Bennett, His Wife, C. P. Munns and Portia Munns, His Wife, *Appellees.*

(131 P. 2d 904)

Opinion filed December 12, 1942.

*Herbert Diets,* of Great Bend, argued the cause for the appellants.

*John Henry Lewis,* of Great Bend, argued the cause, and *R. C. Russell* and *Isabel Obee,* both of Great Bend, were on the briefs for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: This was an action to quiet title against a mineral conveyance of an undivided one-eighth interest in the oil and gas in a quarter section of Barton county land, which interest was to endure for fifteen years and for as long thereafter as gas or oil is being produced thereon in paying quantities.

The grantor was Henry Templing, owner of the land. The grantee was M. W. Bennett. The instrument of conveyance was executed on October 6, 1928, but was not filed for record until June 30, 1934.

As time passed Bennett sold a half interest in his mineral rights to one C. P. Munns, and Templing conveyed the fee title of the land to his two sons, David and Emanuel, reserving to himself a life estate in the mineral rights and rentals pertaining thereto.

On October 2, 1940, the three Templings commenced this action, alleging the pertinent facts, invoking an application of that provision of the taxation statute, G. S. 1935, 79-420, which declares that where a conveyance of a mineral interest in land to be held in separate ownership from the fee title is not recorded within ninety days after its execution, it shall become void if it is not listed for taxation.

Defendants answered with a general denial and certain admissions, and pleaded acts of estoppel and laches.

At the trial the facts were developed partly by stipulation and otherwise by witnesses, chiefly employees of the offices of the county clerk and county treasurer. The principal defendant gave testimony in accord therewith. The evidence, which was not controverted, was to this effect:

Sometime in December, 1928, before the ninety days after the execution of the mineral deed had expired, Bennett presented it to the county clerk and ex-officio county assessor, stating that he desired that it be listed for taxation. The county clerk returned the instrument to Bennett, stating that he had no books or records for that purpose. Thereafter in March of each year, 1929 to 1932, inclusive, Bennett presented the instrument with the request that it be listed for taxation, and on each of those occasions he received the same answer and refusal by the county clerk. Not until 1933 did Barton county begin to tax nonproducing mineral interests in real estate. In that year Bennett's instrument was listed for taxation and the tax thereon was belatedly paid. In each of the years following, down to and including 1939, Bennett's mineral interest was regularly taxed and the taxes thereon were paid.

The trial court made findings of fact as summarized above and gave judgment for defendants.

Plaintiffs appeal, asking our critical attention to the precise language of the statute on which they rely. It reads:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the right to such minerals shall be valued and listed separately from the fee of said land, in separate entries and descriptions, and such land itself and said right to the minerals therein shall

be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the first day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves: *Provided,* That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation." (G. S. 1935, 79-420.)

It is the contention of plaintiffs that when the county clerk declined to list Bennett's mineral conveyance for taxation it was his bounden duty to have it recorded or to bring mandamus proceedings against the county clerk to compel him to list it for taxation. We cannot assent to either alternative of that contention. Quite frequently it is very much to the disadvantage of the parties concerned in title to land to have the record cluttered with a multitude of fractional interests in the property. If occasion should arise that the land is to be sold and the record title is laden with a multitude of infinitesimal subsurface fractional interests therein, the cost of a proper abstract of title would exhaust the entire purchase price of the land. So the legislature has provided that failure to record a mineral interest conveyance within ninety days will make it void only in case such interest is not listed for taxation. (G. S. 1935, 79-420; *Richards v. Shearer,* 145 Kan. 88, 64 P. 2d 56.)

Now what did the legislature mean by the words "listed for taxation"? We think it meant their usage according to common understanding, a usage with which all taxpayers are familiar. It hardly needs to be said that in listing property for taxation the usual practice is for the taxpayer to give the tax assessor a statement of his property and the assessor enters (*i. e.,* lists) the items of property on an assessment blank prepared by the state tax commission. (G. S. 1935, 79-1401.)

Judicial cognizance of this familiar and practical operation of the statute was taken by this court in the early years succeeding the enactment of the statute. (Laws 1897, ch. 244, § 1.) Thus in *Gas Co. v. Neosho County,* 75 Kan. 335, 338, 339, 89 Pac. 750, where the requirement that a severed mineral interest in land should be recorded or listed for taxation, it was said:

"Minerals in place being real estate, the act assumes that instruments creating separate interests in them will be placed of record, but it provides that if such instruments are not recorded within ninety days after execution they shall become void, *unless they are brought to the attention of the tax officials so that the purpose of the first part of the section may be accomplished.* . . . The phraseology employed conclusively shows that the law was not framed for the simple purpose of placing leases of mineral land in the

same category with mortgages and tax-sale certificates, and the proviso of the law has no other office than that already assigned it." (Italics ours.)

In *Western Union Telegraph Co. v. Howe,* 180 Fed. 44, 52, where the term "assessment" in our state constitution was in question, the circuit court of appeals held that the word "assessment" meant "the official listing of property for the purpose of constituting a basis upon which taxes are to be levied."

In the official blanks prepared by the state commission of revenue and taxation, successor to the state tax commission, form 2, revised 1939, which are required to be used by the assessors in taking the personal property statements of taxpayers, we read:

"INSTRUCTIONS

"1. G. S. 1935, 79-301, provides: 'Every person of full age and sound mind, shall list, at its true value in money, all personal property subject to taxation, etc.' This means that the assessor is to take a statement from every man or woman (husband and wife separately); and from either the natural or legal guardian of every minor or incompetent person. It also means that a no-property statement is to be taken from every person who claims to own no property."

The listing of property for taxation is the making of a schedule or inventory of it, and to accomplish it there should be, as there usually is, a collaboration of the property owner and the assessor. The owner makes a statement of his property in response to the assessor's inquiries prompted by the blank listing form in his hand. At the same time the owner gives his estimate of the value of each piece of property inquired about, but the assessor enters his own estimate of its value. (*Gillett v. Treasurer of Lyon Co.,* 30 Kan. 166.) It is true, as remarked in *Mining Co. v. Crawford County,* 71 Kan. 276, 278, 80 Pac. 601, that—

"Tax laws are the growth of experience and the development of property. Changes must be made from time to time by amendments, repeals, alterations, or additions, as new conditions require, in order that all classes of property may be required to bear a just proportion of the public burden."

Looking into the taxation statutes of other states, we find that collaboration of the taxpayer and the assessing officer in respect to the listing of property is the common practice. Indeed, in Iowa the statute provides that the taxpayer "shall assist the assessor in listing all property," etc. (*Beresheim v. Arnd,* 117 Ia. 83, 90 N. W. 506.) In that case it was said:

"In each case the duty was imposed on the taxpayer to make known his property. One who permitted the assessor to list his property at much less

than its real assessable value, . . . certainly did not 'assist the assessor' in making up the tax roll." (p. 86.)

The case of *People v. Quinn*, 18 Cal. 122, was a criminal prosecution for perjury in swearing that defendant's verbal statement of his property made to the assessor was true when in fact it was false. It was held that—

"The oath to be made, under the revenue act of 1857, to the 'list' or 'statement' of taxable property, need not be in writing. Nor need the taxpayer furnish in writing such 'list' or 'statement.' It is sufficient if he give the assessor the necessary information to make out the 'list.'"

Sec, also, 1 Words and Phrases, 2d ser., 301-304; 4 Words and Phrases, Perm. ser., 417-438, and 61 C. J. 590 *et seq.*, and notes.

Pursuant to the stipulated facts and undisputed testimony in the instant case the trial court made specific findings which read:

"5. The court finds that the said instrument was by the said Bennett caused to be filed for record in the office of the register of deeds of Barton county, Kansas, on June 30, 1934, and that the defendant M. W. Bennett did all things required of him to cause said property to be listed for taxation.

"9. The court finds that the said M. W. Bennett at all times acted in good faith in trying to get the county clerk and the county assessor to list the said instrument for taxation, and that the said M. W. Bennett was at all times ready, willing, and able to pay any taxes assessed against said property by the county assessor of Barton county, Kansas."

Necessarily these findings controlled the judgment.

And while the foregoing sufficiently disposes of the principal question urged in this appeal, defendants did plead laches. It is a familiar rule of equity that one who is entitled to claim a forfeiture must do so promptly; otherwise he cannot invoke equitable principles to aid him. Here the plaintiffs waited for a dozen years before attempting to enforce a forfeiture of Bennett's interest; and for seven years, from 1933 to 1939 inclusive, they stood by and let him pay the taxes on his mineral interest, without hint or question of his rights in the property. This fact clearly distinguishes this case from *Hushaw v. Kansas Farmers Union Royalty Co.*, 149 Kan. 64, 86 P. 2d 559, relied on by appellants. In a multitude of instances and in a great variety of circumstances, this court has applied the familiar rule of equity that a right of forfeiture must be promptly asserted or it will be treated as waived. (*Jones v. Sunflower Natural Gas Corp.*, 137 Kan. 790, 793, 22 P. 2d 482; *Cowman v. Phillips Petroleum Co.*, 142 Kan. 762, 766, 51 P. 2d 988.)

The judgment is affirmed.