HUMPHREY R. WAGAR v. BENJAMIN BRISCOE AND ANDREW J. BROW.

*Mechanics' lien attaches to realty and is confined to debtor's interest—Notice of sale.*

A title secured under the mechanics' lien law is purely statutory and its validity depends on an affirmative showing that every essential statutory step in the creation, continuance or enforcement of the lien has been duly taken.

Statutory provisions permitting the summary enforcement of private charges, such as mechanics' liens, on property without the assent of the owner or judicial sanction, cannot be extended in their operation beyond the plain and fair sense of the terms in which they are expressed.

One cannot at the time of contracting for building material and by that act alone, incur a mechanics' lien against land upon which the building is to be put up, if he had then no legal or equitable title to it.

Notice of a sale for the enforcement of a mechanics' lien must be posted and published as in cases of execution sales of real estate, except that twelve days must intervene between the completion of the act of notification and the time of sale.

A mechanics' lien for building materials can arise only on a contract made by the owner, part owner or lessee of the land to be affected; and cannot attach to anything besides his actual interest.

A mechanics' lien in Michigan attaches to an entire interest of the debtor in premises considered only as real estate, and not to chattels separated from it.

A mechanics' lien enforced against a simple equity must be confined to that, and a sale of the equitable interest must be subject to the rights of the legal owner.

Replevin will not lie to recover possession of houses that had been erected on posts and were afterwards removed from land against which the plaintiff had enforced a mechanics' lien for the indebtedness of one who had only an equitable interest in the premises.

Error to Wayne.   Submitted Feb. 1.   Decided April 9.

REPLEVIN.   Plaintiff brings error.

*Slesinger & Frost* and *Alfred Russell* for plaintiffs in error.

*Prentis & Fox* for defendants in error.   A sale under a mechanics' lien must be shown to have complied with the decree and the statute authorizing such sale, *Goodright v. Gilbert*, 1 Yeates, 300; *Wheelwright v. Depeyster*, 1 Johns., 471; *Carter v. Simpson*, 7 id., 535; *Com. v. Kennard*, 8 Pick., 133.

GRAVES, J.   Wagar brought replevin to obtain two buildings which one William Webster had erected on posts upon lots 18 and 19 of Briscoe's subdivision of lots 64 and 65 of the subdivision of the Porter farm in the city of Detroit.   And he based his right exclusively upon a title made to him by sale in proceedings taken for the Wagar Lumber Company to enforce an alleged lien for materials furnished by the company to Webster for the construction of said buildings.

The court directed a verdict for defendants and Wagar brought error.   The record suggests many questions of importance and a number of which are noticed in the able briefs which have been submitted.   There is no occasion however for considering these various topics or even for noticing several objections which occur to the lien proceedings.

October 26, 1874, Briscoe then being owner, agreed in writing to transfer his ownership of the lots to Webster on certain specified terms and not otherwise. Webster was to pay him $1900 in five equal annual installments of which the first was to be made October 26, 1875. He was likewise to pay interest at seven per cent semi-annually on the first days of January and July, and discharge all taxes and assessments subsequent to the agreement. Upon payment being made as specified Briscoe agreed to convey in fee simple clear of all liens and incumbrances except such as might accrue after the agreement by or through the acts or negligence of Webster. It was also mutually agreed that Webster might have possession October 27, 1874, and should keep the property in as good condition as it was then in, until payment of the purchase price; and in case Webster should fail to perform his undertakings or any part of them, that Briscoe should have the right thereupon to declare the contract void and to retain whatever should have been paid and all improvements and to treat Webster as tenant holding over without permission, and to enter, take possession and remove him.

Webster went into possession under this contract and paid $20 upon it: but being unable to pay more he surrendered the contract and possession to Briscoe some time in the spring of 1875. The precise time is not shown. According to the record the transaction as between Briscoe and Webster was completely effaced.

Briscoe then conveyed the lots by deed to Brow, and so far as appears neither was aware that the lumber company claimed any lien on the lots or on the erections upon them. All proceedings for creating a lien and in its prosecution were directed against Webster. Neither Briscoe nor Brow was notified.

The buildings were put up by Webster between the date of his contract of purchase, October 26, 1874, and its surrender in the spring of 1875.

Some time in the same spring, but exactly when does

not appear, the Lumber Company by Ephraim C. Wagar who represented himself as being its agent, filed a petition in the circuit court for Wayne county under ch. 126 of the Revised Statutes of 1846 and being part of Comp. L., ch. 215 to enforce an alleged lien which it claimed to have established and to hold on said lots 18 and 19 and the buildings thereon on account of materials it had furnished to Webster for said buildings under a verbal contract for such materials which it had made with him on the 24th of October, 1874, being two days before Briscoe agreed to sell to him.

The petition charged that Webster then owned the lots; that the Company furnished the materials pursuant to the agreement of the 24th of October; that when the petition was filed, a time as already stated which does not appear, the price had been due more than sixty days and remained unpaid; that on February 15, 1875, the Company filed with the register of deeds of Wayne county a verified certificate describing the land where the buildings were, the terms of the contract with Webster and the amount due exclusive of credits; that the certificate was recorded in such office on the same day and a verified duplicate served on Webster personally.

It then prayed a sale of the lots and buildings to satisfy the lien and for such other or further relief as might be proper. It was verified April 3d, 1875. Subsequently, but at what precise time does not appear, Webster answered. But the answer simply consisted of denials that the Company was incorporated under the laws of this State; that Ephraim C. Wagar was its authorized agent; that he, Webster, entered into the contract specified; that there was due to the Company $864.64 or any sum from him, and that sixty days had elapsed after the coming due of such debt.

June 4th, 1875, the circuit court appears to have made a decree which after reciting that it appeared on examination of the several claims presented that there

was due from Webster to the company $894.90 principal and interest: to William Plumer, an intervening claimant, $409.33 principal and interest, and to Aaron D. Mitchell, another intervening claimant, $76.75 principal and interest; that said several sums were liens upon the premises mentioned and described in the petition of the Company as had been alleged in the several petitions: —proceeded to adjudge that the Company, Plumer and Mitchell were respectively entitled to the sums so appearing due from Webster, and that a lien existed upon the premises aforesaid in favor of said parties, pursuant to the statute, and that all and singular the premises described as being certain buildings on said lots 18 and 19, and all right, title and interest Webster had or might have in said lots should be sold at public auction at the court house in Detroit by James H. Pound, Jr., one of the circuit court commissioners for Wayne county, twelve days after notice of the time and place of sale given by the commissioner; that at such sale the commissioner should give the purchaser a certificate as in case of sales on execution, etc.

December 9, 1875, being more than six months after making of the decree, the court upon a stipulation to that end by the solicitors for the Company and for Webster and for the intervening claimants Plumer and Mitchell, entered a further order amending the decree as of its date so as to preclude sale of Webster's interest in the lots, and order sale of the buildings "separate and apart from the right, title and interest of the said defendant in and to said several lots."

The deed given by the commissioner as printed in the record has but one correct date. It is there printed as having been given January 10, 1875, and acknowledged January 11th, 1875, upon a sale made January 4th, 1875, under an order of December 9th, 1875.

The sale may be assumed to have been made January 4th, 1876.

The deed recited that notice of the time and place of

sale had been given by advertising the same for thirteen successive days once in each day in a Detroit newspaper, and that the premises were struck off to Humphrey R. Wagar, who was the highest bidder, for $1090 which was the highest bid, and then proceeded to grant the buildings on said lots 18 and 19 with all and singular the rights, titles and privileges and appurtenances to said Wagar, his assigns, executors and administrators forever.

The title claimed by Wagar under these proceedings is purely statutory, and its validity must depend on the provisions under which it was formed and the steps taken to produce it.

In perfect agreement with the views generally maintained in the tribunals of our sister States, this court has repeatedly declared in substance that these acts are innovations upon the common law over the rights of property by permitting the institution of private charges on property without or against the owner's assent and without any judicial or other official sanction, and by authorizing an enforcement of such charges by unusual and summary methods, and that the provisions of these enactments cannot be extended in their operation and effect beyond the plain and fair sense of the terms, and that parties asserting liens or titles resting upon them must bring themselves and their titles plainly and distinctly within these terms and affirmatively make out that a lien was originally effected regularly and thereafter kept up, and that every essential statutory step either in the creation, continuance or enforcement of the lien has been duly taken.

We have seen nothing to shake these opinions.

As already intimated, there are many points against the plaintiff's case which might be referred to. It is only needful, however, to glance at one or two and notice another with somewhat more attention.

*First.* The entire proceedings in court contemplated

as the only ground of lien whatever an express contract by the company with Webster and Webster alone for materials, made as the sworn petition affirmed, two days before he had acquired any legal or equitable connection whatever with the lots in question. He was not in a situation in which by his sole and single act and without aid from some subsequent express or implied engagement or obligation he could bring an encumbrance upon the lots, or buildings thereafter attached to them.

*Second.* The officer who makes sale is required to "give *notice* of the time and place appointed therefor, in the manner prescribed in relation to the sale of real estate on executions, unless the court shall order other or different notice to be given." Comp. L., § 6803.

Where real estate is to be sold on execution, *notice* of the time and place of holding such sale shall be given by fastening up a notice in three public places in the proper locality six weeks previous to the sale and publishing a copy in the proper newspaper once in each week for six successive weeks. Comp. L., § 4629.

The "notice" to be given of the time and place of sale is composed of these different incidents and publications, and is not made and cannot be made of part of them. They must concur in order to amount to the "notice" required in execution sales. And as the decree simply required "notice" without specifying the mode and only prescribed that twelve days must elapse between notice and sale, it must be considered that the same publication by posting and advertising was demanded as the law requires on execution sales of real estate, except that it was made necessary there should be a space of twelve days between the completion of the acts of notification and the time of sale. The decree intimated no other deviation from the statutory requirements in regard to execution sales. No such "notice" was given or could be.

Only sixteen days intervened between the order of

sale and the day of sale. Hence the sale was not warranted by the decree.

*Third.* The kind of lien in question can originate only in contract, and no one is capable of making this contract who is not the "owner, part owner or lessee of the land" to be affected, and the lien is to attach to the contractor's entire interest in the land and *its* additions made by aid of the contract, but it cannot exceed the interest of the contracting party. Comp. L., § 6789. The declaration of lien for record must describe the "piece or pieces, lot or lots, of land" on which the building, etc., shall be or is to be put up, etc., and the lien is to attach, although as yet nothing has been "put up" or added. Comp. L., § 6790. The sub-contractor's lien which rests finally on the existence of a debt owing to the original contractor, is to attach "to the land." Comp. L., § 6792. The petition must describe the "premises" subject to the lien and pray for their sale or other disposition. § 6794. Notice is required to be given to all other creditors having a similar lien on the "same lands." § 6795. If the "owner" resides out of the State an order of publication is authorized. § 6796. Creditors having a like lien on the "same land" may appear, etc. § 6797. The amount due each creditor who has a lien of the kind mentioned "upon the estate in question" is to be ascertained. § 6799. When "the owner of the land" makes default, the lien creditor may recover for his own part performance. § 6800. When a sale is made and it produces a surplus, the excess is to be paid to the "owner of the land." § 6807. If "the land" is under attachment when the contract is recorded, the lien of the attaching creditor is preferred to the extent of the value of the "land and buildings" at the time of such record. § 6808. If the procurer of the work has only a life estate or some other estate less than a fee simple in "the land" on which the work is done, or if "the land" is mortgaged when the contract is recorded or is under any other incumbrance he is yet to be considered as the

"owner" to the extent of his right and interest "in the land," and the lien will bind his whole estate and interest therein. § 6813. If the debtor "convey away his estate" the lien may be prosecuted against the holder. § 6814. When the court comes to decree in what way satisfaction of the lien shall be brought about, it may, when the same can be done justly, order sale of a distinct part of the premises separate from the balance, or order sale of the buildings or machinery separately. §§ 6801, 6802.

These references show that the thing to be subjected to the intended lien must be real estate and not separate chattels.

Wherever referred to, the charge is contemplated as applying to land, or land and things annexed to land, and there is no warrant any where for imposing a lien on an adjunct of the land as though it were a piece of separated personalty.

The law perceives the land and its additions in deciding on what the lien shall rest, as entire realty and not as associated or mixed lands and goods. And the same enactments show what conditions are necessary to fit one to be turned into a lien debtor; and they establish the fact that no lien can be induced on any man's ownership except on the basis of his own indebtedness, and can then be extended no further than his ownership extends.

The proceedings of the Lumber Company to establish and enforce the lien contemplated the city lots and the buildings as entire realty liable to the lien and they also contemplated Webster as the "owner" of an entire interest in the lots and buildings regarded as one property, and in fact his interest was an equity pervading the whole and one which did not include, as a full and complete ownership would, any right to separate the buildings from the land. The legal title was in Briscoe and as against him Webster could not assert an ownership of the buildings separate from the land or any

right to detach them from it. Neither could he confer upon third persons any right sufficient to enable them to work out such an ownership or to separate the buildings in opposition to Briscoe's claims.

Conceding it was competent for the company to institute a lien against Webster and to enforce it under the statute, and still it is evident that the proceedings were required to be confined to his equity and to be subject to Briscoe's rights. And such being the case it was not competent to order a sale of the whole of a distinct part of the property. Webster's ownership was not of a nature to allow it. All that was in any court possible was a sale of his equitable interest in the land and buildings and subject to the rights of Briscoe.

It follows, therefore, that the amended decree ordering the buildings to be sold by themselves and under which the sale was made was unauthorized and insufficient to maintain Wagar's claim of title.

He was not entitled to recover and the result was consequently right.

The judgment should be affirmed with costs.

The other Justices concurred.