THE CHICAGO LUMBER COMPANY v. HENRY SCHWEITER
*et al.*

FACTS, *Stated*—*Mechanics' Lien, Subordinate to Mortgage Liens.* S. entered into an agreement to sell certain lots to J. on credit, which provided that J. was to build a house on the lots to cost not less than $1,500, and when the house was inclosed, S. was to convey the lots to J. by warranty deed, when J. was authorized to make a mortgage and obtain a loan on the lots for $1,200, after which J. was to execute a mortgage on the lots to S. to secure the payment of the purchase price of the same. It was also stipulated that until the deed and mortgages were made, as provided, the legal and equitable title should remain in S., and that until that time J. could not subject the property to any liens. The deed and mortgages were made as

provided in the contract, but some time prior to their execution J. purchased from a lumber company material for use, and which was used, in the construction of the house, but did not pay for the same, and the lumber company filed a statement for a lien on the lots against J. as owner. *Held*, In an action to foreclose the lien of the lumber company, that the contract under which J. held limited his interest and ownership, and his right to create liens on the lots, and that the lien of the lumber company is subordinate to the mortgage liens given in pursuance of the contract.

### *Error from Sedgwick District Court.*

ACTION to foreclose a mechanic's lien. Judgment on July 11, 1888. The plaintiff *Lumber Company* brings the case to this court to determine the priority of liens. The material facts are stated in the opinion.

*Hatton & Ruggles*, for plaintiff in error.

*Sluss & Stanley*, for defendant in error Schweiter.

*Hallowell, Hume & Gordon*, for defendant in error Darlington.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action brought by the Chicago Lumber Company to enforce a mechanic's lien against real estate in the city of Wichita, for lumber and building material furnished to S. T. Jones. It appears that on April 29, 1887, Henry Schweiter, who was the owner of the real estate mentioned, as well as other lots in the same locality, entered into a written contract agreeing to sell a large number of lots to S. T. Jones, who in turn agreed to build one house on each parcel of four lots, each of the houses to cost not less than $1,500, and to be worth that sum. It was stipulated that when each of the houses was inclosed, Schweiter should convey the four lots upon which the same was situated to Jones by a good and sufficient warranty deed, and that Jones should then have the privilege of placing a mortgage for a loan, not exceeding $1,200, on any one house and parcel of four lots, which should be a first lien on the lots, and that thereupon

Jones should execute to Schweiter two notes, each for one-
half of the purchase-price of the parcel of lots so conveyed,
one due in six months, and the other due in one year from
date, with 8 per cent. interest per annum until due, and 12
per cent. interest per annum after maturity until paid, together
with a mortgage on each parcel of lots to secure the payment
of said notes, and that, until the execution and recording of
each of said mortgages, Jones should keep said lots clear of all
liens, judgments and taxes, of every kind and description, on
his account, so that the mortgage to Schweiter should be a lien
second and inferior to said first-named mortgage of $1,200.
The purchase-price of each of the lots was $350, and it was
provided that the title of all of the property mentioned in the
contract, both legal and equitable, should remain in Schweiter
until the mortgages and conveyances aforesaid were made,
and that Jones should be liable for interest upon the purchase-
price of the property at 8 per cent. during that period, which
interest should cease when the mortgages for the purchase-
money were executed, and then the interest therein stipulated
should be paid.    On May 2, 1887, Jones contracted with the
Chicago Lumber Company for lumber and material with which
to build a house and barn on four of the lots mentioned in the
contract, and the delivery of the same to Jones was begun on
that day and completed on June 25, 1887, and the same was
purchased for use and was used in the construction of the
house and barn.    The price of the lumber and material so sold
and delivered amounted to the sum of $963.83.    On May 20,
1887, Schweiter executed and delivered a deed of the lots to
Jones, and on the same day, and in pursuance of the contract
between Jones and Schweiter, Jones and wife executed a note
and mortgage to Smedley Darlington, and received thereon the
sum of $1,200, and this mortgage was recorded on May 21,
1887.    On May 20, 1887, and in pursuance of the contract,
Jones and wife executed and delivered to Schweiter notes for
$1,400, being the purchase-price of the lots, and also a mort-
gage to secure the payment of the same.    This mortgage was
given subject to the Darlington mortgage, and it stipulated that

14—45 KAS.

it was given to secure the balance of the purchase-money of the mortgaged property. This instrument was filed for record on May 23, 1887. On September 9, 1887, the Chicago Lumber Company filed in the office of the clerk of the district court a statement, claiming a lien against the real estate for the lumber and building material furnished under a contract with S. T. Jones, as owner; and it is admitted that Jones was indebted to the lumber company in the sum of $963.83, with interest thereon, and that the lumber and building material were purchased by Jones from the lumber company to be used in the construction of the house and barn, and were so used. The lumber company brought this action on November 11, 1887, to foreclose its lien, and made Schweiter and Darlington parties defendant, and asked that their interests be held to be inferior and subordinate to the lien of the lumber company. On the trial, the court found and decreed Darlington's mortgage to be the first lien on the premises, Schweiter's to be a second lien, and that the Chicago Lumber Company held the third lien.

It is claimed that the court erred in postponing the lien of the lumber company to those of Darlington and Schweiter. The claim of the plaintiff depends on the right of Jones to subject the property to a lien. The contract of the lumber company was made with Jones at a time when Schweiter held the legal and equitable title to the real estate, and no statement for a lien by the lumber company was ever made or filed against Schweiter as owner. He made no agreement and gave no consent which would subject his interest or estate in the land to a lien. It is true, he made a contract for the sale of the lots with Jones which contemplated the erection of buildings thereon, but in this contract it was expressly stipulated that the legal and equitable title should remain in Schweiter until certain conveyances were made, and until that time Jones should have no authority to subject the lots to liens of any kind or description. To create a valid lien for material or labor, it is necessary that the person for whom they are furnished should be an owner within the

meaning of the statute, and have a right at the time the contract for the same is made to create a lien. The only claim which Jones had upon the land was derived from his contract with the owner, and any one who relies on the contract to establish ownership in Jones must be governed by the limitations and conditions therein contained. When the lumber and material were purchased and furnished, Jones did not have the legal title, and by the terms of the contract which he made he did not have the equitable title, and he could create a lien on no greater interest than he held. "In general, it must be said, that only the interest of the contracting party can be subjected to the lien; and if he has no interest, there is nothing to which the lien can attach." (2 Jones, Liens, §1245; *Wagar v. Briscoe,* 38 Mich. 587; *Hayes v. Fessenden,* 106 Mass. 230.) If the lumber company had examined the public records when the material was sold and delivered, it would have ascertained that the legal title was in Schweiter; and if it had pursued the inquiry as it should have done, it would have learned of the contract between Jones and Schweiter, with all of its conditions and limitations. As has been said:

"They should have exercised some care and caution as to whether their employers — or the purchasers — had such an interest in the property as they could subject to a lien for the lumber and material furnished. Under the statute, no lien attaches to the building unless the person with whom the contract is made has some interest or estate in the land on which it is situate. The lien is upon the realty with the building attached to the extent of the ownership of the one who contracted for the construction of the building, and no further; and if there is no ownership, there is no lien on either land or building." (*Huff v. Jolly,* 41 Kas. 537.)

The lumber company, therefore, can claim only through the contract under which Jones held, and must take subject to the restrictions and limitations therein imposed on Jones. The contract stipulated that the $1,200 mortgage should be the first lien on the lots when they were conveyed to Jones, and the one given to Schweiter for the purchase-money should

be a second, and an examination of the contract would have warned the lumber company that it must look to the proceeds of the first mortgage, which was doubtless provided as a fund for the erection of the building, or else it must make a contract with Schweiter, who was both the legal and equitable owner. Whatever equities Jones had in the property under his contract were subject and subordinate to the interest of the owner, as the contract provided; and as the lien can in no event cover more than the qualified interest that Jones had, it follows that such lien is subject and subordinate to the liens and mortgages expressly provided for in the contract. The contract appears to have been carried out by Schweiter strictly in accordance with its terms and in good faith, and we find no room for the application of the principle of estoppel as against either of the mortgagees.

The facts in the cases cited by the plaintiff are unlike those in the present case, where the relations and rights of the parties are fixed by express agreement by which all must be governed.

The judgment of the district court will be affirmed.

All the Justices concurring.