THE E. W. SMITH LUMBER COMPANY, *Appellant*, v.
F. J. ARNOLD et al., *Appellees*.

No. 17,874.

SYLLABUS BY THE COURT.

1. MECHANIC'S LIEN—*Oral Contract to Purchase—Lien Attaches
to Equitable Interest of Purchaser*.  A purchaser of vacant
lots under an oral contract by which he agreed to pay part of
the purchase price in cash, the balance when deed was delivered,
with the understanding that he was to erect houses on the lots,
took possession before making the cash payment, and con-
tracted for labor and material which were used in erecting
the houses.  *Held,* that he acquired the equitable title and that
a lien for the labor and material attached thereto.

2. ——— *Estopped In Pais*.  In such case, under the facts shown
in the evidence and stated in the opinion, it is held that the
vendor is estopped by his conduct to claim, as against persons
contracting with the purchaser for labor and material used in
erecting the houses, that the cash payment was a condition
precedent to the vesting of the equitable title.

Appeal from Sedgwick district court, division No. 1.
Opinion filed January 11, 1913.  Reversed.

*S. B. Amidon, D. M. Dale, Jean Madalene,* and *L. R.
Fulton,* all of Wichita, and *B. F. Hegler.* of Guthrie,
Okla., for the appellant.

*H. G. Ruggles,* of Wichita, for the appellees.

The opinion of the court was delivered by

PORTER, J.: Action to foreclose a mechanic's lien.
The defendant, F. J. Arnold, is the owner of two resi-
dence lots in the city of Wichita which he authorized a
real-estate agent to sell for him.  They were vacant
lots and the price at which they were listed was $250.
The agent showed the property to D. F. Sutton, a build-
ing contractor, who made an offer to take them and to
pay $100 in cash and the balance in forty days.  He
told the agent that he wanted the lots to build houses

30—88 KAN.

on, that he wanted to build right away. The agent saw the owner and informed him of the offer; the owner said it was all right and the agent told Sutton that the arrangement was satisfactory. There was no contract in writing. Sutton at once began the erection of two houses on the property and contracted with the plaintiff lumber company for the material. He saw the agent several times within the next month and asked for an abstract of title which the owner had agreed to furnish. The agent went to see the owner about the abstract and was told that Sutton could have no abstract until he made the cash payment. On the same day the owner and the agent went to the property and saw the houses which were in process of building. Sutton was then informed by the agent that the owner would not furnish an abstract until a payment was made. No express authority was given by the agent to Sutton to take possession of the lots, nor was any demand made for the cash payment until the owner was told that the abstract was asked for. Up to this point there is no dispute as to the facts. Arnold testified that he had no knowledge that the houses were being built until he went to the property with the agent four weeks after accepting the oral offer. A witness for plaintiff testified that he put in the foundation for both houses; that while at work on the second foundation he saw Arnold at the property "looking around"; that sometime before the lien of the lumber company was filed he went to Arnold to see about getting pay for his labor and material; that Arnold said he had been at a good deal of expense and trouble and wanted to know how much witness would settle for; that after some conversation Arnold offered him seventy-five per cent of his bill, which he accepted, and Arnold paid him; that he had made an offer to Arnold to pay him all expenses and the purchase price of the lots and take up Sutton's contract. This offer it appears was not accepted. The attorney of appellant

testified that he went to Arnold and asked him to pay the account of the lumber company for the material it had furnished, and that Arnold said he had no fault to find with the lumber. company except that their bill was too high, and that he had fooled around with Sutton long enough, that Sutton had never paid a cent, and that he was going to start suit to put Sutton off the property. The bookkeeper of the lumber company testified that before the lien was filed Arnold came to the office of the company and said the bill was too high. Mr. Stanley, a lawyer, testified that he went to Arnold when the houses were nearly completed and told him that Sutton had made arrangements to raise the money and pay for the lots, and inquired how much cash he wanted; that Arnold said he would take fifty dollars down; that the witness then went and got a check for that amount which he offered to Arnold and asked for the abstract, and that Arnold said he would see about it. Witness saw him again about the matter and Arnold said that he had decided not to furnish an abstract, that the houses were built on the lots and he could hold them and would do so.

There was evidence of another offer made to Arnold by a man named Adams, who claimed to have a contract with Sutton for the purchase of the houses, and who testified that he went with Sutton to Arnold after the houses were nearly finished and made an offer to take up Sutton's contract and pay the purchase money, and that the offer was refused. Soon afterwards Arnold brought an action in ejectment against Sutton, and procured a restraining order enjoining the defendants in the action from removing the houses from the property. On March 14, 1910, judgment for possession was rendered in his favor, and a permanent injunction was granted restraining Sutton and all persons claiming through or under him from removing the houses or any part thereof from the premises. On the trial of this action to foreclose the lien of the lumber

company the court sustained a demurrer to plaintiff's evidence. The question for determination is whether Sutton obtained such an interest in or title to the property as will support a lien for the material furnished under a contract made by him with the lumber company. A mechanic's lien can attach to an equitable estate or interest in lands.

"Taking the whole of the law together, and it undoubtedly means that a mechanic's lien shall operate upon the whole of the estate which the person procuring the labor and materials may have in and to the property for which he procures the same, whatever may be the character of that estate, but that such lien cannot operate upon anything more than such estate, and that so far as it does operate, it is the paramount lien upon the enhanced value given to such estate by the labor and materials." (*Seitz v. U. P. Railway Co.*, 16 Kan. 133, 140.)

In *Drug Co. v. Brown*, 46 Kan. 543, 26 Pac. 1019, it was held that one in possession of real estate under a verbal agreement for a conveyance to him becomes the equitable owner within the meaning of the mechanic's lien statute and that the lien of the material man attached to such interest. If the interest owned by the person who makes the contract is less than a fee simple estate the lien is upon the lesser estate. (*Hathaway v. Davis & Rankin*, 32 Kan. 693, 696, 5 Pac. 50; *Choteau et al. v. Thompson & Campbell*, 2 Ohio St. 114.)

"It is generally held that a party in possession under a contract of purchase, and who is to be invested with full title upon compliance with certain conditions, is regarded as an owner under the mechanic's-lien laws. (Phillips on Mechanics' Liens, § 69.)" (*Lumber Co. v. Osborn*, 40 Kan. 168, 172, 19 Pac. 656.)

An equitable title is sufficient. (*Mortgage Trust Co. v. Sutton*, 46 Kan. 166, 26 Pac. 406.) The facts in the present case distinguish it from the cases of *Huff v. Jolly*, 41 Kan. 537, 21 Pac. 646, and *Lumber Co. v.*

*Schweiter,* 45 Kan. 207, 25 Pac. 592, where it was held that no lien was acquired by material men because the possession of the real estate was taken under the conditional agreements which were never performed, and therefore no interest or title passed to which a lien could attach.    In *Huff v. Jolly,* supra, the agent had authority to negotiate for a sale at a stipulated price, .part cash and balance on time, and the contract was not to be effective until the payment was made and the contract approved.    The proposed purchasers knew of these terms and agreed to take the lot.    They never made any payment and no written contract was entered into, but they erected a building on the premises. It was held that they had no interest or estate in the property and could create no lien on the lot or building for labor and material furnished.    In the Schweiter case the contract was in writing, and while the purchaser was to take possession and erect a building, it was expressly stipulated that the conveyance should not be made until the house was enclosed, and that then the purchaser should mortgage the property for a specified amount, that until the deed and mortgages were made the legal and equitable title should remain in the grantor, and until that time the grantee should not create any lien upon the property for labor or material.    The material furnished by the plaintiff was purchased before the execution of the deed and mortgage.    It was said in the opinion:

"The only claim which Jones (the purchaser) had upon the land was derived from his contract with the owner, and any one who relies on the contract to establish ownership in Jones must be governed by the limitations and conditions therein contained."    (45 Kan. 211.)

.In *The People's Savings, Loan and Building Association v. Spears et al.,* 115 Ind. 297, 17 N. E. 570, it was held that:

"Something more than mere inactive consent is

necessary in order that a lien may be acquired against the owner of property." (p. 301.)

The position Arnold takes in respect of the payments made to other material men is, that those payments were made long after plaintiff had contracted with Sutton to furnish material; therefore it is said no estoppel arises to benefit plaintiff. It is argued that he wanted no houses erected, that all he desired was to sell the lots; further, that he has no assurance that all the material included in the lien statement was ever used in the construction of the houses, and he claims, moreover, that they were poorly constructed.

The plaintiff relies upon the fact that the lots were purchased under an offer to the agent in which it was expressly stated that Sutton wanted them to build houses on at once, that they were begun at once and no objection to their being built was made until more than a month afterwards; and our attention is directed to the evidence showing that when the defendants were informed by the agent that Sutton was asking for the abstract he placed his refusal solely upon the ground that no cash payment had been made, and he made no claim or assertion to the effect that Sutton was not rightfully in possession, that in fact he permitted the plaintiff to continue to furnish material for the houses for several weeks after he was fully informed that they were being constructed. We think that Sutton under his verbal contract, accompanied by possession and the making of valuable improvements, acquired the equitable title, and that he might have maintained a suit for specific performance upon a tender of the purchase money, or have set up the same claim by a cross-petition in the ejectment action. (*Everett v. Dilley*, 39 Kan. 73, 17 Pac. 661; *Drug Co. v. Brown*, 46 Kan. 543, 26 Pac. 1019.) The possession appears to have had the essential qualifications of being open, notorious, exclusive and in pursuance of the contract.

(*Baldwin v. Squier,* 31 Kan. 283, 1 Pac. 591; *Baldwin v. Baldwin,* 73 Kan. 39, 84 Pac. 568.)   It is true, as suggested, that a lien for labor or materials can only attach by virtue of the statute as applied to the facts, and that no lien of this kind can be created by force of equitable rules.   At the same time courts are established for the purpose of doing justice and not to assist a party to obtain an unconscionable advantage; and in a case like this slight circumstances might be considered sufficient evidence that the holder of the legal title acquiesced in the purchaser taking possession of the lots and in contracting for the material.   If he permitted the purchaser to take possession under the oral contract and to make the improvements he ought to be estopped to deny that the purchaser obtained the equitable title.   By obtaining a judgment in ejectment and an injunction forbidding the purchaser and those claiming under him from removing the houses or any part thereof the defendants foreclosed whatever equitable rights the purchaser had acquired and the equitable title merged in the legal title.   At the time of the merger the plaintiff's lien had attached to the equitable title.   The payment of the $100 was not made a condition precedent to the passing of the equitable title, as in *Huff v. Jolly,* 41 Kan. 537, 21 Pac. 646, and in *Lumber Co. v. Schweiter,* 45 Kan. 207, 25 Pac. 592.   It was in the power of the defendant as vendor to make the cash payment such a condition at any time before the rights of third persons intervened; but it was too late for him to fall back upon that provision of the contract after having permitted possession to be taken under the oral agreement and the improvements to be made which enhanced the value of the property.

Applying these principles to the facts shown by plaintiff's evidence we hold that plaintiff is entitled to a lien upon the equitable title acquired by Sutton and that the decree should provide for a sale of the property, giving to the defendant the first lien upon the

proceeds for the purchase money and interest and the plaintiff a second lien thereon.

The judgment will be reversed and the cause remanded with directions to overrule the demurrer to the evidence.