NEW HAMPSHIRE SAVINGS BANK et al. v. VARNER et al.

In re BRON.

(Circuit Court of Appeals, Eighth Circuit. August 29, 1914.)

Nos. 4105, 4121–4125.

1. BANKRUPTCY (§ 440*)—APPELLATE PROCEEDINGS—MODE OF REVIEW.

An order of a court of bankruptcy allowing or denying a lien or priority of a lien asserted against property of a bankrupt estate as security for a debt of $500, or more, whether the debt or only the right to a lien is contested, is properly reviewable by appeal under Bankr. Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 440.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. MORTGAGES (§ 151*)—PRIORITY OF LIENS—MORTGAGES AND MECHANICS' LIENS.

The owner of real estate sold the same to bankrupt pursuant to a verbal agreement that the bankrupt should give a purchase-money mortgage to the vendor which should be subject to another mortgage given at the same time for borrowed money, and that no work should be done on the premises until the transaction was completed and the deed and mortgages filed for record. This agreement was carried out, and the deed and mortgages were delivered and filed for record on the same date and as parts of the same transaction. Held, that the mortgage liens attached simultaneously with the vesting of title in the bankrupt, and that no valid mechanic's lien could attach to the property through any contract with the bankrupt prior to that time.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 307, 309–311, 314–329, 332–336; Dec. Dig. § 151.*]

3. MECHANICS' LIENS (§ 168*)—TIME OF ACCRUAL—BEGINNING OF WORK.

Under Gen. St. Kan. 1909, § 6244, relating to mechanics' liens, as construed by the Supreme Court of the state, a mechanic's lien dates from the commencement of the building or improvement, but such commencement must be in good faith and not a mere pretense at commencement to defeat prior liens on the property.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 299, 300; Dec. Dig. § 168.*]

Appeals from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

In the matter of Charles Bron, bankrupt. Appeals by the New Hampshire Savings Bank and P. J. Conklin, from orders denying priority to mortgages held by them over mechanics' liens in favor of G. F. Varner and W. R. Marshall, doing business as the Wichita Lumber Company, J. C. Titus and J. H. Higley, partners as the Titus-Higley Lumber Company, A. S. Orr, doing business as the North End Hardware Company, the Haines Tile & Mantle Company, the Jackson-Walker Coal & Material Company, and the Home Builders' Association. Reversed.

The appellants the New Hampshire Savings Bank, a New Hampshire Corporation, as assignee of E. D. Kimball, and P. J. Conklin made proof before the proper referee in bankruptcy of separate debts against the bankrupt estate of Charles Bron, a bankrupt, in the sum of $8,312.50 and $5,218, re-

spectively, and in the proofs alleged that their respective debts were secured by mortgages upon certain real estate of the bankrupt situated in the city of Wichita, Kan., known as the Waco Avenue property in that city, and each asked that his debt be allowed in the sum claimed and as secured by his mortgage, and that mortgage adjudged the first or prior lien in the order thereof upon said real estate as security for said debts. The several appellees appeared before the referee and objected to the allowance of the appellants' mortgages as prior liens upon said property to secure such debts as against them, and alleged that they severally held mechanics' liens upon said property each of which under the statute of Kansas was prior to the liens of the appellants' mortgages, and asked that their respective mechanics' liens be adjudged liens upon the property prior to the liens of the mortgages; and the trustee in bankruptcy in behalf of the general creditors objected to the allowance of any liens upon the property. The referee heard the claims of the respective parties upon testimony in which there is sharp dispute as to the date of the execution of the deed of the property to the bankrupt, and of the execution and delivery of the appellants' mortgages, and the commencement of the improvement of the property, from which the several mechanics' liens date, and adjudged the liens of the appellants' mortgages to be valid and prior to the several mechanics' liens of the appellees; directed the property to be sold and the proceeds applied to the payment, first, of the mortgage lien of the New Hampshire Savings Bank, second, to the mortgage lien of P. J. Conklin, and the remainder, if any, to the mechanics' liens of the several appellees without priority as between them. Upon separate petitions of the appellees for review of such order, the district court reversed the order of the referee and decreed the several mechanics' liens to be prior in equity to the mechanics' liens of the appellants, and directed that the proceeds arising from the sale of the property be applied, first, to the payment of those liens without priority as between them, and the remainder, if any, to the payment, first, of the mortgage lien of the New Hampshire Savings Bank, and, second, to the mortgage lien of P. J. Conklin (in accordance with the provisions of the Conklin mortgage), and that the appellants pay the costs of the proceedings. From this decree the appellants separately prosecute these appeals. The parties have stipulated in writing that the several appeals shall be submitted upon the same record and as one cause; that the amounts of the mortgages and mechanics' liens shall be as found by the referee; and that only the question of their priority shall be submitted to this court for determination.

Kos Harris and Charles G. Yankey, both of Wichita, Kan. (V. Harris, R. L. Holmes, and Winn Holmes, all of Wichita, Kan., on the briefs), for appellants.

J. A. Brubacher and Chester I. Long, both of Wichita, Kan. (A. V. Roberts, Paul Brown, and George Gardner, all of Wichita, Kan., on the briefs), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and REED, District Judge.

REED, District Judge (after stating the facts as above). [1] The appellants are confronted at the threshold of the proceeding with motions to dismiss their respective appeals upon the ground that their remedy, if any they have, is by petition to revise in matter of law under section 24b of the Bankruptcy Act and not by appeal under section 25a. The determination of this question is ruled by the decision of this court in Coder v. Arts, 152 Fed. 943, 82 C. C. A. 91, 15 L. R. A. (N. S.) 372, affirmed by the Supreme Court in 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Matter of Loving, 224 U. S. 183, 32 Sup. Ct. 446, 56 L. Ed. 725; In re Hartzell, 209 Fed. 775, 126

C. C. A. 499 (this circuit). And see In re Streator Metal Stamping Co., 205 Fed. 280. 123 C. C. A. 444.

In Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, above, it was insisted by the trustee, as it is by the appellees here, that inasmuch as no objection was made to the amount found due upon the notes by the District Court, and it was only sought by the appeal to further contest the right to the security asserted by the mortgagee Arts, that his remedy was under section 24b, by petition to revise in matter of law and not by appeal; but it was held that the character of the proceedings must be determined by the nature of the claim set up against the bankrupt estate, and that appeal was the proper remedy to question the validity of a lien asserted as security for a debt of more than $500.

In Re Hartzell, 209 Fed. 775, 126 C. C. A. 499, there was asserted in effect, by way of intervention in the bankruptcy proceedings, a lien alone upon the property of the bankrupt, and it was held that an appeal in such case was also an appropriate remedy to review the decision of the court of bankruptcy denying such lien.

In the Matter of Loving, 224 U. S. 183, 32 Sup. Ct. 446, 56 L. Ed. 725, a bank made proof of its debt against a bankrupt estate before the proper referee in bankruptcy, and in its proof asserted a lien under a statute of Kentucky upon certain property of the bankrupt estate, and asked that its debt be allowed as a claim secured by such lien. The claim was allowed by the referee as a lien against the estate of the bankrupt over the objection of Loving the trustee in bankruptcy, who petitioned the Court of Appeals to revise in matter of law the order of the referee establishing the lien only. The Supreme Court held that the fact that after the adjudication of the claim the trustee made no further objection to its allowance, and contested only the validity of the lien, did not change the appellate character of the proceedings, and that appeal was the appropriate remedy.

The establishing of liens upon real or personal property as security for a debt and determining the priority thereof are well recognized grounds of equity jurisdiction; and whether the assertion of a lien in bankruptcy proceedings be in connection with a claim for a debt which it is alleged it secures, or a lien only upon the property, an appropriate remedy for the review of the decisions of courts of bankruptcy, which proceed upon equitable principles, is appeal under sections 24a and 25a of the Bankruptcy Act.

The motion to dismiss the appeals upon the ground that they are not the proper remedy must therefore be denied.

The appellees in Nos. 4121, 4122, and 4125 separately move to dismiss the appeals upon the further ground that the mechanics' lien in each of those cases is less than $500 (as they in fact are), and that the appeals should be dismissed for that reason. But it is the decree adjudging the appellants' liens to be inferior to those of the several appellees that is sought to be reviewed, and it is the amount of the appellants' liens respectively that determines their right to appeal, and not the amount of the several liens of the appellees. These motions to dismiss the appeals must also be denied.

[2] Section 6244 of the General Statutes of Kansas (1909) provides:

"Any person who shall under contract with the owner of any tract or piece of land, or with a trustee, agent, husband or wife of such owner, perform labor or furnish material for the erection, alteration or repair of any building, improvement or structure thereon; or who shall furnish material or perform labor in putting up of any fixtures or machinery in, or attachment to, any such building, structure, or improvement; * * * shall have a lien upon the whole of said piece or tract of land, the building and appurtenances, in the manner herein provided, for the amount due to him for such labor, material, fixtures, or machinery. Such liens shall be preferred to all other liens or incumbrances which may attach to or upon said land, buildings, or improvements, or either of them, subsequent to the commencement of such building * * * or improvements."

It is held by the Supreme Court of Kansas that this statute gives to the materialman or laborer, for material furnished or labor done in constructing buildings or improvements upon the land of another, a lien for such material and labor prior to all liens or incumbrances upon the property that may attach subsequent to the commencement of the work upon the building or improvement, or the furnishing of fixtures, machinery, or repairs where the lien is claimed for fixtures, machinery, or repairs. Kansas Mortgage Co. v. Weyerhaeuser, 48 Kan. 335, 29 Pac. 153; Nixon v. Cydon Lodge, 56 Kan. 298, 43 Pac. 236, and cases cited. Whether or not any of the several mechanics' liens in question are for fixtures or machinery furnished for this building does not definitely appear. As the building was an entirely new structure, it may be assumed that the liens are all for material used in its construction. Three questions then arise: (1) When did the bankrupt acquire title to this property; (2) when did the appellants' mortgage liens attach thereto; and (3) when was the work of constructing the building actually commenced? From the testimony taken by the referee and certified by him to the District Court upon the petitions for review, it appears without dispute: That on and prior to January 1, 1911, Mrs. Conklin, wife of the appellant Conklin, was the owner of the property and occupied it with him as a part of their homestead. That the bankrupt had some negotiation with the appellant Conklin for its purchase shortly prior to that date which was consummated by a deed from Mrs. Conklin and her husband to the bankrupt delivered January 4, 1911, but bearing date December 31, 1910. During these negotiations it was especially agreed verbally that the bankrupt was to execute a purchase-money mortgage to the appellant Conklin for $4,500, and one to a Mr. Kimball for $7,500 (the New Hampshire Savings Bank mortgage), which was for borrowed money presumably to enable the bankrupt in part at least to improve the property. That these mortgages should be executed and delivered concurrently with the execution and delivery of the deed to the bankrupt, and be the first or prior liens upon the property; the Kimball mortgage to be prior to that of Conklin. That the mortgages were so executed by the bankrupt and wife and delivered when the deed to the bankrupt was delivered, as one transaction, and all were filed for record in the office of the proper register of deeds, January 4, 1911, about noon of that day; the Kimball mortgage being marked filed a few minutes prior to the Conklin mortgage. There was no agreement or understanding that the bankrupt should have posses-

sion or the right of possession of the property before the deed and mortgages were executed and delivered; in fact, the agreement was that there should be no work done upon the premises until the transaction was completed and the deed and mortgages filed for record. It is the contention of the appellees that the deed to Bron was delivered on January 3d; but the great weight of the testimony convinces that the deed was not completed by the acknowledgment of Mrs. Conklin until the morning of January 4th; and that it was not delivered until that morning there is no doubt under the testimony. Under these facts, neither the title to the property nor the right of possession vested in the bankrupt until January 4, 1911, and no valid mechanics' lien could attach to the property under any contract with the bankrupt prior to that time; and the appellants' mortgage liens attached simultaneous with the vesting of the title in the bankrupt, and were therefore the prior liens upon the property. Huff v. Jolly, 41 Kan. 537, 21 Pac. 646; Chicago Lumber Co. v. Schweiter, 45 Kan. 207, 25 Pac. 592; Getto v. Friend, 46 Kan. 24, 26 Pac. 473; Missouri Valley Lumber Co. v. Reid, 4 Kan. App. 4, 45 Pac. 722. See, also, Hayes v. Fessenden, 106 Mass. 230; Conrad v. Starr, 50 Iowa, 470, 479, 482; Wagar v. Briscoe, 38 Mich. 587, 592, 593.

In Chicago Lumber Co. v. Schweiter, 45 Kan. 207, 25 Pac. 592, above, the Supreme Court of Kansas said:

"To create a valid lien for material or labor, it is necessary that the person for whom they are furnished should be an owner within the meaning of the statute, and have a right at the time the contract for the same is made to create a lien. The only claim which Jones had upon the land was derived from his contract with the owner, and any one who relies on the contract to establish ownership in Jones must be governed by the limitations and conditions therein contained. When the lumber and material was purchased and furnished, Jones did not have the legal title, and by the terms of the contract which he made he did not have the equitable title, and he could create a lien on no greater interest than he held. 'In general, it must be said that only the interest of the contracting party can be subjected to the lien; and, if he has no interest, there is nothing to which the lien can attach.' 2 Jones, Liens, § 1245; Wagar v. Briscoe, 38 Mich. 587; Hayes v. Fessenden, 106 Mass. 230. If the lumber company had examined the public records when the material was sold and delivered, it would have ascertained that the legal title was in Schweiter; and if they had pursued the inquiry, as they should have done, they would have learned of the contract between Jones and Schweiter, with all of its conditions and limitations."

[3] The appellees contend that the work of excavating for the cellar of a building to be erected upon the premises was begun early in the morning of January 3, 1911, and continued during January 4th and for some days thereafter, and that such beginning was, under the Kansas decisions, the commencement of work upon the building. If that is true, then a contract for such excavation was made before the bankrupt acquired any title to or right of possession of the property, and was not with the owner thereof; and liens arising upon work done under such contract would attach only to the interest the bankrupt then had in the property and would not take precedence over the appellants' mortgages, which vested simultaneously with the vesting of the title in the bankrupt. The appellees' contention as to the commencement of this excavation rests upon the testimony of Charles Bron, Jr., son of

the bankrupt, who testified that between Christmas, 1910, and January 1, 1911, he arranged with a Mr. Underwood and a Mr. Jones to clear the premises and do the work of excavating for the cellar of the building known as the Waco flats that his father was to erect upon the premises in question; that in the afternoon or evening of January 2d (which was Monday) he saw Mr. Underwood and told him he wanted to commence the work of excavating the next morning, and for him to be there early and he would meet him on the premises; that Mr. Underwood came shortly after 8 o'clock the morning of January 3d; that he (Bron, Jr.) then staked out lines for the cellar and Underwood took away two loads of dirt; that the weather was so cold and the ground frozen so hard that they had to quit work and did nothing more that day; that the next morning, January 4th, Mr. Jones came and they continued the excavation during that day and subsequent days until it was completed. As a reason for commencing this work on January 3d, he said that it was a practice he had adopted some two or three years before of having work commenced on the construction of buildings before mortgage liens were filed thereon; that his father was engaged in building upon unimproved property, and was unable to obtain lumber or building materials on credit unless work was commenced for a building before mortgage liens were filed thereon.

Mr. Underwood testified that he was told by Mr. Bron, Jr., the afternoon of January 2d, that he wanted him to commence the work of excavating for the cellar early the next morning; that he went there shortly after 8 o'clock and found Mr. Bron, Jr., upon the premises who staked out lines for the cellar; that the weather was so cold and the ground frozen so hard that they could do but little work; that he succeeded in getting one small load with a pick and shovel and part of another along one side of the cellar line and hauled them away and quit work; that the next day was also cold, but not as cold as the day before, and they continued the work. Mr. Jones testified that he went there on January 4th and worked with Underwood in excavating for the cellar; that he was sick the next day but sent his boy in his stead. Mr. and Mrs. Conklin, who lived upon the premises and in full view of where the excavating is alleged to have been done, testified positively that no work was done in excavating for the cellar on January 3d or 4th; that January 3d was so cold that Mrs. Conklin could not go out to complete the execution of the deed of the property to the bankrupt. Others living near the property testified that they saw no evidence of work done upon the premises on January 3d or 4th, nor was any done until some days after January 4th.

In certifying the evidence to the judge upon the petition for review, the referee says:

"At an early hour of January 3, 1911, Bron entered upon the premises with laborers and did an hour or two's work toward excavating for the foundation of a building which was to be erected on the premises. Soon after this various parties furnished labor and material in and about the erection of improvements, for which they filed mechanics' liens, presented herein as secured claims; that in the course of the proceedings in said case the following questions arose: Which of the respective claimants was entitled to the first, second, and third lien on the funds? And it was determined that the lien created by the mortgage from Bron to Kimball and assigned to the New Hampshire

Savings Bank vested immediately upon its execution, delivery, and record, and was a first lien on the premises; and the mortgage to Conklin, by agreement between the parties, created a lien upon its execution, delivery, and record and was a second lien on the premises; and the creditors having mechanics' liens, which were coequal, were entitled to a third lien without preference to any one of them, their liens not having precedence over the mortgages, the actual beginning of the building not having commenced until after the 3d day of January, 1911, the work done by the bankrupt on that day being fraudulently done by the bankrupt for the purpose of giving preference over the mortgages to mechanics' liens to be thereafter created and established. * * *"

It is true that under the Kansas statute, as construed by the Supreme Court of that state, mechanics' liens date from the commencement of the building or improvement. Thomas v. Mowers, 27 Kan. 265; Chicago Lumber Co. v. Schweiter; Getto v. Friend, above, and Kansas Mortgage Co. v. Weyerhaeuser, 48 Kan. 335, 29 Pac. 153. This, of course, means a commencement of the building in good faith and not a mere pretense at commencement to defeat prior liens upon the property.

In Kansas Mortgage Co. v. Weyerhaeuser, above, the question of what constitutes "the commencement of a building" is considered, and after quoting from a number of cases the court says:

"The commencement of a building in law takes place with the digging and walling of the cellar. * * * It is some work or labor on the ground, such as beginning to dig the foundation, which every one can readily see and recognize as the commencement of a building. In the cases of Kelly v. Rosenstock, and Kugler v. Rosenstock, 45 Md. 389, it was held that where a lessee, before he had acquired an interest in the property, and before a survey had been made, went with his foreman and a laborer, and drove stakes to indicate the line of the foundations, and at one corner dug or scraped away the dirt down to a level, the whole work occupying but a part of a day, that this could not be considered as the commencement of the building. In the case of Savings Bank v. Fellowes, 42 Conn. 36, it is held that bringing a considerable amount of lumber upon the premises and beginning to build a fence around the lot does not create a lien prior to a mortgage executed after the delivery of the lumber or the commencement of the fence; the work on the house not commencing until after the execution of the mortgage. * * * These citations (including Conrad v. Starr, 50 Iowa, 479, and others) are enough to show the drift of judicial opinion upon this question. As the avowed object and main purpose is to create an impression on the mind of any person who seeks to purchase or acquire an interest or lien in the land, the acts indicating that a building thereon is being commenced ought to consist of work of such character that a person of ordinary observation could determine that a building was in process of construction."

From this decision and the cases therein cited it seems clear that the work done by the bankrupt's son and Underwood on the premises on the morning of January 3d, conceding for the moment that such work was done that morning or the morning of January 4th, was not such work as amounted to the commencement of the building within the meaning of the Kansas statute; and when it is considered that it was done, as stated by the bankrupt's son, to defeat the liens of the prior mortgages, it is entirely clear that what was done was but a mere pretense at the commencement of a building, done to defeat bona fide prior liens upon the property.

The work of Underwood and Jones in excavating for the cellar, whatever was done, was paid for by the bankrupt when done, and no lien was filed therefor. When the material of the several appellees was contracted for or furnished for the building is not shown by the record other than the referee states in his certificate that it was some time after January 4, 1911. There can be no doubt under the testimony that if they had then examined the record title to this property, as it was their duty to do, if they relied upon a lien thereon as security for the material (Chicago Lumber Co. v. Schweiter, 45 Kan. 207, 25 Pac. 592, above), they would have discovered that appellants' mortgages were executed and filed for record at the same time the deed to the bankrupt was executed and as a part of one transaction and were prior liens upon the property.

It is also claimed that Underwood cleaned the premises of some shrubbery and a few trees during the holidays; but such work if done is no indication of the beginning of a building. Kansas Mortgage Co. v. Weyerhaeuser, above.

The appellees cite and rely upon Smith Lumber Co. v. Arnold, 88 Kan. 465, 129 Pac. 178, and cases cited. In these cases the builder was either in actual possession of the property under an agreement for such possession, or the owner knew of such possession and that a building was being erected and made no objection thereto. In Chicago Lumber Co. v. Fretz, 51 Kan. 134, 32 Pac. 908, one of the cases cited in behalf of the appellees, the mortgagee and mechanic's lienholder both claimed under Fretz, who was in actual possession of the property when the mortgage and mechanic's lien attached. In this case there was no such agreement, nor was Bron in actual possession of the property, and neither appellant knew that any work was done upon the premises preparatory to a building prior to the delivery of the deed and mortgage and the filing of the same for record, and no facts are shown which estop either of the appellants from enforcing his mortgage lien upon the property as against the several appellees.

The District Court erred in adjudging the mechanics' liens to be prior to the appellants' mortgages, and its decree is reversed and the cause remanded to that court, with directions to allow each of the appellants' mortgages as prior liens upon the property in the order thereof, and superior to the mechanics' liens of the several appellees. It is ordered accordingly.