No. 29,283.
No. 29,408.

Zoa D. Miller, Sole Surviving Trustee of the Last Will and Testament of William Irvin Miller, Deceased, and J. Earl Leech, Partners doing business as the W. I. Miller Lumber Company, *Appellees*, v. The Bankers Mortgage Company, *Appellant;* L. L. Hill; B. J. Miller and George H. Hoyes, Partners doing business as the Miller-Hoyes Paint and Glass Company; G. C. Doering and The Kansas Life Insurance Company, *Appellees*.

(287 Pac. 618.)

Opinion filed May 3, 1930.

*Mary Williams Koger* and *J. A. Fleming,* both of Topeka, for the appellant.

*W. Glenn Hamilton,* of Topeka, for appellee W. I. Miller Lumber Company; and *Harry Blaker,* of Topeka, for appellees B. J. Miller, George H. Hoyes and G. C. Doering.

The opinion of the court was delivered by

Hutchison, J.: The Bankers Mortgage Company, one of the defendants in an action to foreclose a mechanic's lien, appeals from

a judgment rendered against it and in favor of the plaintiff and two defendants, all subcontractors, giving them mechanics' liens on the leasehold estate of the mortgage company, and later in the same action the mortgage company appeals from a judgment sustaining a garnishment against it, and in favor of two of the three subcontractors. The first appeal involves the validity of a mechanic's lien on a leasehold estate; the second the regularity of the garnishment proceedings.

The Bankers Mortgage Company leased the entire second floor of a business building in Topeka from the owner, the Kansas Life Insurance Company, for a term of five years, to be used as office rooms and for no other purpose. Sections 10 and 17 of the lease are as follows:

"Tenth: The lessee shall install meter and pay for the amount of electricity used. Also install meter and pay for water used. And the said lessee is to build all partitions at their own expense and in such a manner not to cause a fire hazard or to increase the insurance rate on said building."

"Seventeenth: It is further agreed and understood by the parties of the first part, The Kansas Life Insurance Company, and the parties of the second part, The Bankers Mortgage Company, that should The Bankers Mortgage Company leave the premises on the expiration of their lease they will be privileged to remove all partitions: *Provided, however,* That the place occupied by these partitions will be placed in good order and the building not left marred or defaced."

To construct such partitions a contract was let by the mortgage company to one L. L. Hill, and he procured lumber and other building material for that purpose from the plaintiff and the two other materialmen made defendants in this action.

No question is raised as to the amount of the claims, the filing of the lien statements in time, nor the failure of the contractor to pay the claims.

The appellant contends that a tenant of a part of a building is not such an owner of a tract or piece of land as to bring him under the provisions of the mechanics'-lien statute, and cites eminent authorities in support of its position. Nearly all the cases cited from other states are under statutes differing greatly from our mechanics'-lien statute. Many of the cases consider and discuss the question of whether the lien can be extended to the building as separate from the land on which it is located, and whether the lien can cover improvements only, and the enforcement of the lien when it is a lien on the improvements only.

But we in this case are not concerned in the solution of any of

these interesting questions and distinctions. We have here a written lease which, under the general authorities as well as our own decisions, makes the lessee an owner as named in our mechanics'-lien statute, R. S. 60-1401, and fully authorizes such lessee to contract for the making of improvements on his leasehold estate, whatever that estate may be, and incur the obligation of a mechanic's lien on such estate in favor of the one who, under contract or subcontract, furnishes labor or material that is used in the construction of improvements on the estate. The physical character of the property owned is not the test. The lien is upon the entire estate of the lessee.

"In some jurisdictions there are statutory provisions extending mechanics' liens to leasehold estates, but, regardless of such provisions, it seems settled that the word 'owner' in a statute giving a mechanic's lien on the interest of an owner is not limited to an owner of the fee, but also includes the owner of a leasehold estate. Consequently, a leasehold estate is subject to a mechanic's lien for an improvement erected by or under a contract with a lessee. . . . The lien attaches not merely to the improvement placed on the premises, but to the entire interest of the lessee in the leasehold." (18 R. C. L. 886, 887.)

"A mechanic's lien may attach to, and be enforced against, a leasehold estate for labor or materials furnished under a contract with the lessee, regardless of whether the lessee has an estate for years or is merely a tenant from month to month, and even though the tenant has the privilege of removing the buildings, machinery, or fixtures from the premises at the end of the term. However, a mechanic's lien upon a leasehold estate attaches subject to all the terms and conditions of the lease." (40 C. J. 63.)

Our own court many years ago reached the same conclusion, and it has regularly adhered to it since.

"A mechanic's lien, or lien for material and labor, may attach to a leasehold estate.

"A leasehold estate may include buildings, fixtures and machinery, placed upon the real estate by the tenant.

"Such a lien may attach to the leasehold estate, including the buildings, fixtures and machinery placed upon the real estate by the tenant, although the tenant may have the right and privilege of removing such buildings, fixtures and machinery from the leased premises." (*Hathaway v. Davis & Rankin,* 32 Kan. 693, syl. ¶¶ 1, 2, 3; 5 Pac. 29.)

"It is said that a mechanic's lien may attach to a building apart from the land (27 Cyc. 226), although the decisions to that effect are for the most part based upon statutes materially different from ours. It attaches to a leasehold interest, and even where this is only that of a tenant at will the lien covers any building or improvement which the tenant would have a right to remove." (*Pond v. Harrison,* 96 Kan. 542, 544, 152 Pac. 665.)

See, also, *Mulvane v. Lumber Co.*, 56 Kan. 675, 44 Pac. 613; *Lumber Co. v. Arnold*, 88 Kan. 465, 129 Pac. 178; *Lumber Co. v. Petroleum Co.*, 116 Kan. 78, 225 Pac. 744; *Lumber Co. v. Malone*, 8 Kan. App. 121; *Horn v. Clark Hardware Co.*, 45 L. R. A., n. s., 100.

It is further urged by the appellant that a mechanic's lien cannot attach to this leasehold estate or any of the tenant's interest in the building or property because the lease expressly forbids an assignment or transfer of the lease without the written consent of the lessor, which the record shows has not been given. In support of this position appellant cites *Moser & Son v. Tucker & Co.*, 87 Tex. 94, and *Holliday v. Aehle*, 99 Mo. 273. The first case was where a tenant, in violation of a special statute denying tenants the right to sublease without the written consent of the landowner, did transfer his lease without such consent and then his creditor attempted to recover from the assignee the rent because the assignment was invalid and not binding. The decision was based wholly upon the statute, holding that the tenant thereunder had no estate that could be transferred, either voluntarily or involuntarily, without the consent of the owner.

The other case cited was under a special statute which in effect protected certain tenants against executions by their creditors unless the consent of the owner was given, and also protected the landlord in his rights. It was there held that the landlord might under this statute lawfully insist on holding the original tenant to the terms of the lease.

We have no such statutes. If the mortgage company in this case had attempted to assign its lease it would have been a breach of the provisions of the contract and the owner might refuse to recognize the assignment, but it would not be in violation of any statute. An involuntary transfer or assignment or one by operation of law is entirely different, and without a special statute protecting the tenant or landlord, the provisions of the lease forbidding the assignment will not prevent a transfer from being effective when done involuntarily and by operation of law. Of course, the interests and rights of the lessor must be fully protected under the contract, and the lessor is the only one who can complain. The lessor in this case was made a party defendant, and in the judgment rendered granting the liens upon the leasehold estate and subjecting the same to foreclosure sale, the decree provides:

". . . that foreclosure should be had of said liens on said leasehold interest

of The Bankers Mortgage Company, subject to the right, title and estate of lessor, The Kansas Life Insurance Company."

The lessor is not here complaining. It has not appealed from the judgment rendered.

"Restrictions against assignment or subletting imposed by the terms of the lease are intended for the benefit of the lessor and his assigns, and if neither of these objects to a breach of the restriction no one else may do so." (35 C. J. 979.)

"A restriction against transfer is not as a general rule regarded as broken by an involuntary alienation or transfer by operation of law. . . . Hence, unless expressly so provided by the lease, the transmission of the lessee's interest to his personal representatives by operation of law, . . . or foreclosure sale, . . . does not amount to a breach of a restriction against assigning or subletting unless it appears that the proceedings were voluntary and collusive on the part of the tenant with a view to defraud the landlord of his rights." (35 C. J. 981, 982.)

"A general restriction on the right to assign is held to include only a voluntary assignment, and not an involuntary assignment. If, however, the lessor desires to avoid an involuntary transfer he may provide expressly in the lease that such a transfer shall work a forfeiture and the courts will give effect to such a provision. As a general rule an assignment arising out of a sale of the leasehold estate on execution does not violate a general restriction against an assignment by the lessee." (16 R. C. L. 834.)

The next point urged by the appellant is that the written notice of the filing of the lien required by statute to be served upon the owner was not served within a reasonable time. The statute, R. S. 60-1403, does not designate the time within which it should be served, and in lieu of any designation of specific time it must be within a reasonable time. This objection applies only to one of the three liens here involved, viz., that of the plaintiff, which was filed March 12, and the written notice was served April 21, after a delay of forty days. Two Kansas cases are cited by both parties as holding the time intervening should be reasonable considering all the facts and circumstances. In the earlier one, *Deatherage v. Henderson*, 43 Kan. 684, 23 Pac. 1052, the time intervening was only eleven days, and the court said:

"What would be a reasonable time for the service of the notice must be determined by the court or jury trying the case, considering all of the attending circumstances." (Syl. ¶ 3.)

In the later case, *Lumber Co. v. McCurley*, 84 Kan. 751, 115 Pac. 590, the time intervening was 137 days and the court took into consideration the fact that the defendants knew and understood about

the claims not having been paid; they had the contractor check them over to see if they were correct; they had conversations with the claimants, talked about settlement, and were in the same condition financially when notices were served as when the liens were filed. The court said:

"It clearly appeared that the school district suffered no injury whatever from the failure to receive earlier formal notice. Under these circumstances it cannot be said that the trial court erred in holding that the school district had no reason to complain, and that the notices were served in time." (p. 755.)

The facts in this case were very similar except as appellant calls our attention to a difference as to the time when the conversations were had. In the case just cited some of the conversations were after the liens were filed, while in the case at bar all the conversations were before the filing of the lien, the last one immediately before the lien was filed, at which time the company was informed that plaintiff claimed a lien and asked the mortgage company not to pay any money to the contractor, and nothing more was paid. We see no reason why the ruling of the trial court should not be sustained, in following the two earlier decisions, when the mortgage company was fully informed orally of the situation and it suffered no injury whatever from the failure to receive an earlier formal statutory notice.

We find no error in the garnishment proceedings.

Both judgments are affirmed.