LORD, et al, Appellants, v. BLACK HILLS MINING CORP., et al, Respondents

(298 N. W. 677.)

(File No. 8436. Opinion filed June 12, 1941.)
Rehearing Denied July 8, 1941.

**Clinton G. Richards,** of Deadwood, for Appellants.

**W. G. Rice** and **B. K. Bettelheim,** both of Deadwood, for Respondent First National Bank.

RUDOLPH, J.  This action was brought for the purpose of foreclosing a purported miner's lien.  The defendant, Black Hills Mining Corporation, was operating a mine under a lease, containing an option to purchase.  The lease among other things provided that "any machinery, equipment, tools belonging to the lessee a period of sixty days will be given for their removal upon the termination or forfeiture of this lease."  The plaintiffs performed labor for and furnished materials to the defendant mining corporation and subsequent to the discontinuance of mining operations, but before the lease was forfeited, filed a miner's lien against the interest of the defendant mining company in the mine and certain machinery, equipment and tools which had been placed upon the property by the defendant mining corporation in operating the mine.  The single question presented by the record is whether the lien became effective.  The trial court held that the lien was not effective, and plaintiffs have appealed.

Some of the history of the miner's lien law in South Dakota is necessary to an understanding of the issues presented and to a decision.  In 1903 there was enacted Chapter 182, Laws of 1903, amending Revised Political Code 1903, § 2573, relating to miner's liens.  So far as material, this section is as follows:  "Every miner or other person who at the request of the owner or owners or his or their agents of any * * * mine * * * shall perform any labor whatever on said mine, * * * or furnish [certain material] * * * shall have a first lien * * * upon such * * *

mine, * * * and upon any property appertaining thereto made in connection with the workings of any mine, * * *." This 1903 law was amended by Chapter 51, Laws of 1909, but the amendment has no bearing upon the issue here presented.

While this law was in effect, the case of Union Trust Company v. Branch Mint Operating Company, 28 S. D. 549, 134 N. W. 65, was decided by this court. In this case it was held that a miner's lien under the 1903 law must be founded upon a contract made with the owner either directly or through his agent. This case decided that the lessee of a mine was neither the owner nor agent of the owner who could, under the miner's lien law, charge the lessor's property with a miner's lien. In 1913 there was enacted Section 16, of Chapter 263, Laws of 1913, which provides: "Whoever performs labor, or furnishes any skill, material, or machinery, in or about the opening or working of any mine, at the request of the owner thereof, or of the lessee of such owner, or of any contractor with either, shall have a lien for the value thereof, upon the interest of such owner or lessee, as the case may be, in said mine and its appurtenances, which lien may be asserted and enforced as in this chapter prescribed in respect to other liens upon real estate."

In 1915 there was passed by the legislature Chapter 243, Laws of 1915, which purported to reenact and amend the law relating to liens on mining property. So far as here material, Section 1 of this act provides: "Every miner or other person * * * who, at the request of the owner or owners, or of his or their agents, of any * * * mine or mining claim * * * shall perform any labor * * * or shall furnish [certain material] * * * shall have a first lien * * * upon such * * * mine, mining claim, * * * or appurtenances thereto, * * *."

The 1915 act specifically repealed former provisions found in our miner's lien statutes, but made no specific reference to Section 16, Chapter 263, Laws of 1913. Thus the law stood until the adoption of the Revised Code of 1919, wherein the 1915 law was in effect reenacted; Section 1 of

that law being Section 1631, R.C. 1919. Section 16 of Chapter 263, Laws of 1913, was omitted from the 1919 code and no similar provision may be found therein.

■ This present action arose under the provisions of our law as set forth in Section 1631, R.C. 1919, and the specific question presented is whether the language therein found, which provides "every miner or other person who, at the request of the owner or of his agent, of any mine or mining claim, * * * shall perform any labor of any kind whatever upon said mine, or mining claim, * * * or shall furnish any materials of any kind * * * shall have a first lien * * * upon such mine or mining claim, and all buildings and machinery therein, or improvement made in connection with such mine or mining claim, or mining property or appurtenances thereto, * * *," is broad enough to give miners who work in the mine and materialmen who furnish materials at the request of the lessee of the mine, a lien upon the lessee's interest in the mine and upon the machinery and improvements which the lessee has placed upon the mining property with the privilege of removing at the expiration or surrender of his lease.

The trial court found in Finding Number Seventh that "the defendant, Black Hills Mining Corporation, was the owner of said Lease and Option and of the following described buildings upon said property and machinery therein, improvements made in connection therewith, and mining property and appurtenances thereto, to-wit:" (property described). This finding clearly brings the property upon which the lien is claimed within the meaning and language of said Section 1631 if the word "owner" as used in that section includes the owner of a leasehold interest in the mine or mining claim. We have searched without success to find a construction placed upon a similar miner's lien law. However, it would appear that the miner's lien laws have been based upon the different provisions of the statutes creating mechanic's liens. These laws relating to mechanic's liens have quite uniformly used the word "owner" in the same sense that that word is used in our present miner's lien stat-

ute. It appears from some of the decided cases that statutes in some of the states expressly define the word "owner" so as to include the holder of a leasehold estate, but even without such definition most courts have construed this word as used in mechanic's lien statutes to include the owner of a leasehold estate. Hathaway v. Davis, 32 Kan. 693, 5 P. 29; Eastern Ohio Oil Co. v. McEvoy, 75 Kan. 515, 89 P. 1048; Owen v. Casey et al, 48 Wash. 673, 94 P. 473; Crutcher et ux. v. Block, 19 Okl. 246, 91 P. 895, 14 Ann.Cas. 1029; and see cases cited in 2 A.L.R. 794, 95 A.L.R. 1095. The Kansas court in the early case of Hathaway v. Davis, supra [32 Kan. 693, 5 P. 30], under a statute which provided "any mechanic or other person who shall, under contract with the owner of any tract or piece of land, * * * perform labor or furnish material * * *" Civ. Code Kan. § 630, stated:

"We think the word 'owner' in the statute, as it now exists, is comprehensive enough to include an owner of a leasehold estate, as well as the owner of a greater estate. In the case of Choteau v. Thompson, 2 Ohio St. 114, 123, the supreme court of Ohio, in construing a similar statute, uses the following words, to-wit:

" 'The word "owner" in the first section of the act is not limited in its meaning to an owner of the fee, but includes, also, an owner of a leasehold estate. If the ownership is in fee, the lien is upon the fee; if it is of a less estate, the lien is upon such smaller estate. To hold that an owner in fee only is meant, would be directly subversive of the policy of the act, and in a great degree render it useless.'

"We think a mechanic's lien, or lien for material or labor, may attach in any proper case to a leasehold estate; and the fact that the tenant may have a right to remove his buildings, fixtures, and machinery from the leased premises, instead of lessening the lien or preventing it from attaching to the leasehold estate, will, as we think, enlarge the lien and enable the lienholder to obtain a greater interest in the leased premises. The privilege of removing the buildings, fixtures, and machinery from the leased premises will not operate to the detriment of the lienholder, but will inure

to his benefit. Neither do we think that the fact that for some purposes, and under some circumstances, the buildings, fixtures, and machinery put upon the leased premises by the tenant may be considered as personal property, can have the effect of preventing the lien from attaching. For the purposes of the lien, in such a case, the leasehold interest will include the right to the buildings, fixtures, and machinery, and the right to remove them; and the whole of such leasehold interest, with the buildings, fixtures, and machinery, will be considered as an interest in the real estate, and under the circumstances the lien will attach to all. The statute giving liens for materials and labor expressly and specifically mentions buildings, fixtures, and machinery, and it was intended by the statute that such liens should attach to the buildings, fixtures, and machinery, as well as to the whole of the estate owned by the party contracting for them."

When viewed in the light of the objects and purposes of our miner's lien law, we believe this statement of the Kansas court to be sound and especially applicable to the fact situation in this case. The later Kansas case of Eastern Ohio Oil Co. v. McEvoy, supra, adhered to the rule announced in Hathaway-Davis case, but held that such rule could not be extended to a mere licensee. See, also, Miller v. Bankers' Mortgage Co., 130 Kan. 543, 287 P. 618.

Respondent relies to a large extent upon the case of Union Trust Co. v. Branch Mint Operating Co., supra, but that case went no further than to hold that, where work was performed or material furnished under a contract with the lessee, such contract could not form the basis for a lien which would bind the property of the lessor. In this case there is no attempt by this lien to bind the property of the lessor, the only attempt being to reach the interest of the lessee. There is the strong implication in the opinion in this Union Trust-Branch Mint case that the court was of the view that had the attempt there been to reach only the interest of the lessee, such attempt would have been successful. The court said [28 S. D. 549, 134 N. W. 67]: "The judgment

rendered cannot be supported upon the finding that the operating company had an interest in the property, because, if based upon that finding, the court would have to determine what that interest was and the lien would be against such interest only \* \* \*." The court further quoted with approval from the case of Gates v. Fredericks, 5 Ariz. 343, 52 P. 1118, as follows: "Parties furnishing material or doing labor for a leaseholder undoubtedly may have a lien against the particular estate of the leaseholder; but to hold the owner of the property responsible, \* \* \* would be to put the landlord at the mercy of the tenant." While neither of these statements was necessary to the decision rendered, nevertheless, we do believe they indicate this court was of the view that our miner's lien law as it then existed was broad enough to give the miner or materialman a lien upon the interest of the lessee where the labor was performed or the material furnished under contract with the lessee. Our present miner's lien law uses the term "owner" in the same sense that it was used when this case upon which respondent relies was decided.

■ Respondent further relies upon the history of our miner's lien law, as set out above, and contends that, when the code commission of 1919 omitted from the 1919 code Section 16 of Chapter 263, Laws of 1913, this indicated an intention to omit from our law provision for a miner's lien against a leasehold interest. With this contention we are unable to concur. Chapter 263, Laws of 1913, related, with the exception of Section 16, to mechanic's liens, and Section 16 was simply attached to a new mechanic's lien law. If Section 16 had any proper place in the revision of the code as made in 1919, it would have been as a part of the miner's lien law written into that code, but in view of the language of this court in the Union Trust-Branch Mint case, quoted above, and the construction of the word "owner" as used in other lien statutes, it would be very reasonable to conclude that the code commission and legislature took the view that Section 16 of the said Chapter 263 was unnecessary as a part of the miner's lien law for the reason that the owner of

a leasehold interest was included in the term "owner" as used in the miner's lien law then existing.

It is clear that the miner's lien law was enacted to furnish protection to those who perform labor or furnish materials in or for a mine. There is no limitation attached to the word "owner" as used in this law, and we are of the opinion that it would be a construction subversive of the intent and purpose of the law to limit the meaning of this word so as to exempt from the operation of the law the owner of a leasehold interest in a mine or mining claim.

The judgment appealed from is reversed.

ROBERTS, WARREN, and SMITH, JJ., concur.
POLLEY, P.J., dissents.