No. 119,091

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DRYWALL SYSTEMS, INC.,
*Appellant*,

v.

A. ARNOLD OF KANSAS CITY, LLC,
EVAN BRANN,
BMJ BUILDING MANAGEMENT, LLC,
BANK OF BLUE VALLEY,

and

MORRILL & JANES BANK AND TRUST COMPANY,
*Appellees*.

SYLLABUS BY THE COURT

1.

The goal of the Kansas Fairness in Private Construction Contract Act, K.S.A. 16-1801 et seq., is to encourage prompt payments of undisputed amounts as they come due under the contracts of the parties.

2.

The Kansas Fairness in Private Construction Contract Act provides incentives to the three tiers of a construction contract—owners—contractors—subcontractors.

3.

In any action to enforce the rights created by the Kansas Fairness in Private Construction Contract Act, the court shall award costs and reasonable attorney fees to the prevailing party. K.S.A. 16-1806.

4.

Ownership is the bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others. Ownership implies the right to possess a thing, regardless of any actual or constructive control. Ownership rights are general, permanent, and heritable. A tenant under a lease is not an owner as defined by the Kansas Fairness in Private Construction Contract Act.

5.

Short-term leases with options to buy are treated as leases, rather than sales contracts.

6.

When a lease contains a stipulation that the renters shall have the right to purchase the premises, if they shall so elect, there is no completed sale. Renters do not acquire any estate in the land beyond the leasehold interest until they have elected to accept the offer and have paid or tendered the purchase price stipulated in the contract.

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed September 27, 2019. Affirmed.

*James F. Freeman III*, of Swanson Bernard, LLC, of Kansas City, Missouri, for appellant.

*Frederick G. Thompson IV*, of Gould, Thompson & Bucher, PC, of Kansas City, Missouri, for appellee A. Arnold of Kansas City, LLC.

Before HILL, P.J., LEBEN, J., and WALKER, S.J.

HILL, J.: Drywall Systems, Inc., appeals the district court's denial of its request for prejudgment interest and attorney fees from A. Arnold of Kansas City, LLC. Because the court found A. Arnold was not an "owner" as defined by the Kansas Fairness in Private

2

Construction Contract Act, K.S.A. 16-1801 et seq., it denied Drywall's request. We agree with the district court—under the plain language of the Act, A. Arnold is not an "owner" and was thus not legally entitled to interest and attorney fees under this Act. Simply put, the Act did not apply here. We affirm.

*A company rents part of a building in Olathe.*

The moving and storage company, A. Arnold, entered into a five-year lease for a part of a building in Olathe owned by BMJ Building Management LLC. When the lease was signed there were tenants already using other parts of the building. For that reason, A. Arnold needed a partition wall built before it could move into the building. The company needed its space separated from the areas rented to the other tenants so it could securely store the property it was moving.

Building the wall was when Drywall became involved. Drywall submitted a bid to A. Arnold to build the wall. A. Arnold accepted the bid and Drywall finished the work. But when Drywall was not paid, it sued A. Arnold, BMJ Building Management, LLC, and others. It brought claims for breach of contract, a mechanic's lien foreclosure, and unjust enrichment.

The district court found for Drywall on its breach of contract claim against A. Arnold. But the court refused to award prejudgment interest and attorney fees to Drywall because BMJ, the property owner, was not a party to the construction contract, and A. Arnold was not an owner as the Act contemplated.

The district court based its ruling mostly on the lease. Under the lease, A. Arnold was specifically prohibited from making alterations, modifications, or changes to the property without BMJ's prior written consent. Relying on this provision, the district court found that A. Arnold contracted with Drywall to build the wall without the right to do so.

3

A. Arnold does not appeal the district court's finding that it was liable to pay Drywall for the work under the contract. Drywall appeals the district court's denial of prejudgment interest and attorney fees.

*The Act encourages prompt payment of undisputed amounts.*

The Act focuses on the three tiers of responsibility in ordinary construction projects—the owners—the contractors—and the subcontractors. The Legislature recognizes that it is good public policy to promote the flow of money through those three tiers. Prompt payment of undisputed amounts is the goal of the Act. To help achieve this goal, the Act gives incentives for owners, contractors, and subcontractors to pay promptly all undisputed amounts due under construction contracts.

Promptness is defined by 30-day and 7-day limits created in the statute.

- If an owner does not pay the contractor within *30 days* of any undisputed amount, then the owner is liable for 18 percent interest on the unpaid amount. K.S.A. 2018 Supp. 16-1803(e).
- If a contractor does not pay a subcontractor within *seven days* of any undisputed amount, then the contractor is liable for 18 percent interest on the unpaid amount. K.S.A. 2018 Supp. 16-1803(f) and (g).
- If a subcontractor fails to pay within *seven days* any undisputed amount to another subcontractor, then the subcontractor is liable for 18 percent interest. K.S.A. 2018 Supp. 16-1803(h).

There is no mention in the law of any other party who may have an interest in the real estate, such as those who hold a mortgage on the premises, or those who have a leasehold. But lienholders, at least for work or materials used during the construction project, are recognized in the Act because they necessarily must be either a contractor or

4

subcontractor. In other words, they are in one of the three tiers of responsibility for the project.

More incentives for prompt payment are found later in the Act where costs and attorney fees can be recovered under K.S.A. 16-1806. It states that "[i]n any action to enforce K.S.A. 16-1803, 16-1804, 16-1805 . . . the court . . . shall award costs and reasonable attorney fees to the prevailing party." If a party is seeking to enforce any of those rights, then if they prevail the court shall award them costs and attorney fees. But the party must be seeking the rights designated in those three statutory sections. We look at all three.

The first—K.S.A. 2018 Supp. 16-1803—has three elements. It begins by banning three contract provisions from all private construction contracts covered by the Act that would make certain existing rights unenforceable. Next, that statute says that making a payment to a contractor or subcontractor conditional upon payment from someone else, including the owner, is no defense to a claim to enforce a lien or a bond. That statute goes on to establish what timeliness means as we stated above.

Then, K.S.A. 2018 Supp. 16-1804 sets the maximum amount that can be retained for these construction contracts at 10 percent. And if that amount is not paid, then the party liable to pay the retainage is liable for 18 percent interest.

And finally, K.S.A. 16-1805 allows a contractor or subcontractor to suspend performance on the contract if not paid after giving notice. Stopping work on the project is a remedy permitted under the Act to force payment of any undisputed amount due.

So if a party is making its claim under one of those three sections of the law— K.S.A. 2018 Supp. 16-1803, 2018 Supp. 16-1804, or 16-1805, that party can ask for costs and attorney fees under K.S.A. 16-1806 if they prevail. Drywall is making a claim under

K.S.A. 2018 Supp. 16-1803 and it did prevail on its contract claim. But is it entitled to the interest, costs, and attorney fees?

*The Act does not apply here because A. Arnold is not an owner.*

Claiming error by the district court, Drywall contends it is entitled to an award of prejudgment interest under K.S.A. 2018 Supp. 16-1803, and costs and attorney fees under K.S.A. 16-1806. In its view, A. Arnold was an "owner" of the building—and subject to paying enforcement costs—because it had a leasehold interest in the property and an option to purchase the building. To the contrary, A. Arnold contends it is not an owner and the Act does not apply. That company contends the district court did not err in denying Drywall's request for prejudgment interest and attorney fees.

The language used in the Act is clear and unambiguous. Under the Act, payments due to a contractor from *an owner* shall be made within 30 days after *the owner* receives a timely, undisputed request for payment. K.S.A. 2018 Supp. 16-1803(d). If *the owner* fails to pay the contractor after receiving such timely notice, *the owner* shall pay interest—computed at an annual rate of 18 percent—to the contractor beginning on the 31st day after receipt of the request for payment. K.S.A. 2018 Supp. 16-1803(e). Similarly, in an enforcement action under K.S.A. 2018 Supp. 16-1803, a court shall award costs and reasonable attorney fees to the prevailing party. K.S.A. 16-1806.

The Legislature chose to use a tautology in defining "owner" in this Act. By this we mean that it used a form of the word to define that word. "Owner" means a person who holds an ownership interest in real property. K.S.A. 2018 Supp. 16-1802(e). The Act does not describe or define the ownership interest contemplated in the definition. This is where Drywall makes its attack.

6

Drywall contends that Kansas courts have historically treated leaseholders as owners, sometimes, such as in condemnation proceedings and in the enforcement of mechanic's liens. While this is not a condemnation proceeding, we note that the lease between BMJ and A. Arnold calls for any compensation due from a condemnation award to be paid to BMJ and not A. Arnold—the tenant. That nullifies Drywall's contention about condemnation proceedings.

Turning to mechanic's liens, Drywall cites *Miller v. Bankers' Mortg. Co.*, 130 Kan. 543, 287 P. 618 (1930). In *Miller*, the Kansas Supreme Court reasoned that "owner" as used in the mechanic's lien statute included the owner of a leasehold estate. In other words, the Supreme Court read that into the statute. Drywall argues the district court should have similarly treated A. Arnold as an owner under the Act and then award it prejudgment interest and attorney fees.

The district court here disposed of this argument by acknowledging that the broad interpretation of "owner" under the mechanic's lien statute could include the owner of a leasehold estate. But the court also observed that while this Act specifically defines "owner," the mechanic's lien statute does not. We agree. The scope of this Act is confined to the three tiers of responsibility in a construction project—owners—contractors—subcontractors. We cannot read anything into this statute as prior courts have done for mechanic's liens. If the Legislature had wanted to include tenants in a building as one of the three tiers, it could have done so by specific reference. The district court held it could not ignore the plain language of K.S.A. 2018 Supp. 16-1802. Neither can we.

Determining legislative intent through statutory language requires giving common words their ordinary meanings. And when a statute is plain and unambiguous, an appellate court should refrain from reading something into the statute not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). We refrain from

reading into this statue that one who owns a leasehold interest in real property is an owner under this Act.

The law dictionary's definition is helpful on this point. "Owner" is defined as "[s]omeone who has the right to possess, use, *and convey* something; a person in whom one or more interests are vested. An owner may have complete property in the thing *or may have parted with some interests in it* (as by granting an easement or *making a lease*)." (Emphases added.) Black's Law Dictionary 1280 (10th ed. 2014). Similarly, "ownership" is defined as "[t]he bundle of rights allowing one to use, manage, and enjoy property, *including the right to convey it to others*. Ownership implies the right to possess a thing, regardless of any actual or constructive control. Ownership rights are general, *permanent*, and heritable." (Emphases added.) Black's Law Dictionary 1280 (10th ed. 2014). These are common meanings, and it is reasonable for us to use the same common meanings here.

The term of A. Arnold's lease with BMJ limited its tenancy to five years. During that time, Arnold was neither allowed to "assign, encumber, dispose of, or convey [the] Lease or any interest under it," without BMJ's prior written consent, nor to sublet or transfer its interest as a tenant. The lease specified that no assignment, sublease, or other agreement would vest any right or title in or to the lease or to the leasehold estate created by the lease. This language leads us to conclude that BMJ has a larger bundle of rights to this building than A. Arnold's simple leasehold. BMJ is the owner—not A. Arnold.

Simply put, the tenant here, A. Arnold, did not have an ownership interest in this real property as an owner. We find illuminating the holding in *Wells Fargo Bank, N.A. v. Woodland Park at Soldier Creek, LLC*, No. 109,699, 2014 WL 2402546, at * 8 (Kan. App. 2014) (unpublished opinion). The *Wells Fargo* panel was not convinced that the Act applied because K.S.A. 16-1802(b) requires that a "contract" be an agreement, e.g., between *an owner* and *a contractor*. The panel found that Wells Fargo Bank's security

8

interest in the property did not make it an owner who signed an agreement with a contractor. "Because the agreement here was not made between the owner of the property—Woodland Park—and the contractor, the Consent Agreement was not subject to K.S.A. 16-1803." 2014 WL 2402546, at *8.

*Wells Fargo* is analogous to the facts here, but instead of a security interest, we are dealing with a leasehold interest. Indeed, while both are interests in the real estate, they are not ownership interests.

Drywall also claims that A. Arnold was an "owner" because under the lease it had an option to buy the premises. But legally, short-term leases with options to buy are treated as leases, rather than sales contracts. *Bd. of Cty. Comm'rs of Johnson Cty. v. Greenhaw*, 241 Kan. 119, 122, 734 P.2d 1125 (1987).

But more significantly, provisions in the lease refute Drywall's broad concept of ownership. The lease stated that BMJ's right to sell the premises was not restricted or prevented by the lease with A. Arnold. This included BMJ's right to sell the lease, along with the property, to a new purchaser. The lease gave A. Arnold a right-of-first-refusal option to match a new purchaser's price and allowed time to arrange for funding to buy the premises following such an offer. But BMJ also retained the right to refuse any offer to buy that A. Arnold might make.

It is important that A. Arnold did not exercise its option to buy the building from BMJ. In *Greenhaw*, 241 Kan. at 122, our Supreme Court said:

> "In *Bras v. Sheffield*, 49 Kan. 702, 31 Pac. 306 (1892), this court held that where the owner of land leases it for a period of five years at a stipulated annual rental and the contract of lease contains a stipulation that the renters shall have the right, at the expiration of the lease, to purchase the premises, if they shall so elect, at a fixed price,

9

there is no completed sale. The court said that renters do not acquire any estate in the land beyond the leasehold interest until they have elected to accept the offer and have paid or tendered the purchase price stipulated in the contract."

Following this reasoning, we conclude that A. Arnold owned nothing more than a leasehold interest in the portion of the building it rented.

Neither A. Arnold's interest in its leasehold as a tenant, nor its option to buy the property, equated to an ownership interest in the real estate. A. Arnold thus did not meet the statutory definition of "owner" under the plain language of the Act. The Act makes no mention of leasehold interests as part of the three tiers—owners—contractors—subcontractors. We will not rewrite the statute to create such an interest.

The district court did not err in its interpretation of K.S.A. 2018 Supp. 16-1802(e) in finding that A. Arnold was not an owner as the Act contemplated. Indeed, the Act did not apply under these circumstances.

Affirmed.